## SOUTHERN RAILWAY COMPANY v. TIFT.

### APPEAL FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 601. Argued April 22, 23, 1907.—Decided May 27, 1907.

Although an action at law for damages to recover unreasonable railroad rates which have been exacted in accordance with the schedule of rates as filed is forbidden by the Interstate Commerce Act (*Texas & Pacific Railway Co. v. Abilene Cotton Co.*, 204 U. S. 426), the Circuit Court may entertain jurisdiction of a bill in equity to restrain the filing or enforcement of a schedule of unreasonable rates or a change to unjust or unreasonable rates.

Where, as in this case, the Circuit Court granted no relief on the original bill prejudicial to the railway company, but sent the parties to the Interstate Commerce Commission, and afterwards rendered a decree based upon the findings and conclusions of that commission and testimony adduced before it, which was stipulated into the case, this court will not reverse the decree, as affirmed by the Circuit Court of Appeals, either because the Circuit Court was without jurisdiction, or because an order of reference in the case was too broad in requiring the master to ascertain the amounts paid by shippers in increased rates after the schedules sought to be enjoined went into effect.

Although reparation for excess rates must be obtained in a proceeding before the Interstate Commerce Commission, the parties to an action brought under § 16 of the Interstate Commerce Act may stipulate after the commission has declared the rate complained of to be excessive that the court adjudge the amount of reparation, and presumably, after the master has reported, the court will make the reparation adequate for the injury and award only the advance on the old rate and to those who are parties to the cause.

The facts are stated in the opinion.

*Mr. Ed. Baxter* for appellants:

The "findings of fact" made by the Commission in the case at bar are not conclusive.

The inquiry made by the Commission in this case was not conducted on a proper basis; it was not made upon a full consideration of all the circumstances and conditions upon

which a legitimate order could be founded; and it was unduly restricted in its scope. *T. & P. Ry. v. I. C. C.*, 162 U. S. 235.

The fact that the court is authorized to "hear and determine the matter as a court of equity" necessarily implies that the court is not concluded by the findings or conclusions of the Commission. There is power in the Circuit Court, and the Circuit Court of Appeals "to consider and apply the evidence," and in this court to review their decisions. *T. & P. Ry. v. I. C. C.*, 162 U. S. 239; *I. C. C. v. Ala. Midland Ry.*, 168 U. S. 175; *I. C. C. v. A., T. & S. F. R. Co.*, 50 Fed. Rep. 304; *I. C. C. v. L. V. R. Co.*, 49 Fed. Rep. 180; *K. & I. Bridge Co. v. L. & N. R. R.*, 37 Fed. Rep. 613, 614.

The finding made by the Commission on a mixed question of law and fact is not entitled to as much weight as the general verdict of a jury.

Whether a rate is reasonable, is a question of "fact." *C. N. O. & T. P. Ry. v. I. C. C.*, 162 U. S. 196; *T. & P. Ry. v. I. C. C.*, 162 U. S. 219, 227, 235, 238; *L. & N. R. R. v. Behlmer*, 175 U. S. 676; *E. T. V. & G. Ry. v. I. C. C.*, 181 U. S. 28.

But whether a rate is reasonable is not a question of "pure fact;" it is a question of "fact mixed with law."

The finding made by the Commission on a mixed question of law and fact is not entitled to as much weight as the general finding of a court.

When the parties waive a jury, under § 4 of the act of March 3, 1865, a general finding of the court upon the facts has the same effect as the general verdict of a jury; and where the general finding of a court includes a mixed question of law and fact, it is as conclusive as the general verdict of a jury, except so far as the matter of law involved in the question may be saved by some exception which the party has taken to the ruling of the court on the law. *Norris v. Jackson,* 9 Wall. 127, 128; *Miller v. Life Ins. Co.*, 12 Wall. 297.

But, where the finding of a trial court is general, either party may readily obtain the judgment of the Appellate Court on any matter of law that may be involved in a mixed question

of law and fact, in one of four ways: Either party may object to the admission or exclusion of evidence and require the trial court to rule on the objection. Or either party may present to the trial court his propositions of law and require the court to rule on them. Or either party may ask for definite ruling by the court as to whether all the evidence is sufficient in law to warrant a finding in his favor. Or either party may get the trial court to make a special finding, which raises the legal propositions. *Norris* v. *Jackson*, 9 Wall. 128, 129; *Miller* v. *Life Ins. Co.*, 12 Wall. 297; *Martinton* v. *Fairbanks*, 112 U. S. 672, 673.

When the verdict of a jury is special, or the finding of facts by a court is special, such a verdict, or finding, "raises the legal propositions" involved in a mixed question of law and fact, and the power of review by this court extends "to the determination of the sufficiency of the facts found to support the judgment." *Norris* v. *Jackson*, 9 Wall. 128, 129; *Miller* v. *Life Ins. Co.*, 12 Wall. 297; *Martinton* v. *Fairbanks*, 112 U. S. 672, 673.

Whether the verdict of a jury or the finding of a court be general or special, either party can compel the separation of matter of law from matter of fact involved in a mixed question of law and fact, and demand the judgment of the court upon so much of the question as consists of matter of law. But according to the contention of appellee, the finding of the Commission on the mixed question of law and fact as to the reasonableness of a rate is conclusive on the matter of law involved in the question, and neither this nor any other court can review the judgment of the Commission on such matter of law. To paraphrase the language of this court in *C. M. &c. Ry.* v. *Tompkins*, 176 U. S. 172, when we recall that, as estimated, over ten thousand millions of dollars are invested in railroad property, the proposition that such a vast amount of property is beyond the protecting principle which insures to everyone else the judgment of the courts upon all questions of law, is one which cannot be tolerated.

*Mr. William Hepburn Russell* and *Mr. William A. Wimbish*, with whom *Mr. W. D. Ellis* was on the brief, for appellees:

The Interstate Commerce Commission had power to adjudge the advanced rate unreasonable and the Circuit Court had jurisdiction to enforce the order of the Commission by injunction and a decree for an accounting. *Tex. & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, *N. Y. N. H. & Hartford R. R. Co.* v. *Interstate Com. Com.*, 200 U. S. 361.

There was no attempt in the case at bar to fix a rate. But the Commission decided that the advanced rate was unreasonable and ordered it discontinued, and this decision was enforced by the decree of the Circuit Court. Hence the procedure in this case is in full accord with the decisions of this court. *Texas & Pac. Ry. Co.* v. *Abilene Oil Co.*, *supra*; *C. N. O. & T. P. Ry. Co.* v. *Interstate Com. Com.*, 162 U. S. 184, 196; *Interstate Com. Com.* v. *C. N. O. & T. P. Ry. Co.*, 167 U. S. 479, 499, 505; Beale & Wyman R. R. Rate Regulation, § 1046.

On such state of the record, that equity had jurisdiction to order the reference, take an account and decree restitution, is clear upon settled principles of equity jurisdiction. 1 Pomeroy's Eq. Jurisp. (3d ed.), § 181; *Peck* v. *School Dist.*, 21 Wisconsin, 516, 523; *United States* v. *Union Pacific Ry. Co.*, 160 U. S. 1, 52.

Jurisdiction in equity being acquired for the purposes of an injunction to prevent the enforcement of the advanced rates, the court, in order to avoid a multiplicity of suits, can proceed to a decree that will settle all matters in dispute between the complainants and the railroad companies. *United States* v. *Union Pacific Ry. Co.*, 160 U. S. 1, 50, 52; *Chicago, M. & St. P. Ry. Co.* v. *Minnesota*, 134 U. S. 418, 460. Nor is there an adequate remedy at law. *Van Patten* v. *Chicago, M. & St. P. Ry. Co.*, 81 Fed. Rep. 545, 551.

Even if the Circuit Court was without primary jurisdiction in this case to enjoin the enforcement of the advanced rates and decree reparation through an accounting, it acquired secondary jurisdiction, justifying the final decree herein under

the petition based on the order of the Interstate Commerce Commission and the stipulations of the defendants as to what decree might be entered and what reparation would be made.

Both the Interstate Commerce Commission and the Circuit Court had power to determine that the advance in rates was unreasonable, and the court had jurisdiction to prevent the enforcement of the rate by injunction, both before and after the order of the Commission directing the discontinuance of the rate as unreasonable. Act to Regulate Commerce, §§ 1, 16, 22; *In re Lennon*, 166 U. S. 548.

The courts have power to pass on the reasonableness or unreasonableness of railroad freight rates. *Covington &c. Turnpike Co. v. Sandford*, 164 U. S. 578, 579.

"A legislature has power to fix rates, and the extent of judicial interference is protection against unreasonable rates." *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U. S. 339, 344; *Stone v. Farmers' Loan & T. Co.*, 116 U. S. 307; *Chicago, Mil. &c. Ry. Co. v. Minnesota*, 134 U. S. 418.

The rates in force at the time of the advance complained of, having been long in effect and remunerative to the carrier, constituted fair compensation for the service performed and therefore the advance was unreasonable. Beale & Wyman, Railroad Rate Regulation, §§ 399, 506; Noyes on Am. Railroad Rates, 211, 213.

The reasonableness of the rate in a given case depends on the facts, and the function of the Commission is to consider these facts and give them their proper weight. *C. N. O. & T. P. Ry. Co. v. Int. Com. Com.*, 162 U. S. 184, 196. And see *E. T. V. & G. Ry. Co. v. Int. Com. Com.*, 181 U. S. 1; *L. & N. R. Co. v. Behlman*, 175 U. S. 648.

The advance in rate being the result of a combination among the defendant carriers in restraint of trade and not the product of free competition but the consequence of a suppression of competition, it is illegal and unreasonable and its enforcement was properly enjoined.

Competition is a fact to be considered in determining whether

rates are reasonable. *Int. Com. Com.* v. *Alabama Midland Ry. Co.,* 168 U. S. 144, 164; *Int. Com. Com.* v. *B. & O. R. Co.,* 145 U. S. 263.

Hence the absence of competition, or agreements that suppress and prevent competition, are material and may be considered by the Commission. *United States* v. *Freight Assn.,* 166 U. S. 290, 341; *United States* v. *Joint Traffic Assn.,* 171 U. S. 505, 565, 575.

The necessary effect of the agreement is to restrain trade or commerce no matter what the intent was on the part of those who signed it. *United States* v. *Freight Assn.,* 166 U. S. 290, 342. And it is not necessary to show that the agreement was entered into for the purpose of restraining trade or commerce if such restraint is its necessary effect. *United States* v. *Trans-Missouri Freight Assn.,* 166 U. S. 291, 312.

Appellants are estopped from questioning the jurisdiction of the court below by the stipulations and agreements into which they entered, and have waived any right to demand a trial by jury as to their obligation to refund and the amount to be refunded by them to complainants and all other shippers of lumber at the advanced rate which has been adjudged unreasonable. *Halliday* v. *Stuart,* 151 U. S. 229; *Perego* v. *Dodge,* 163 U. S. 160, 166; *Bank* v. *Okely,* 4 Wheat. 235, 243.

Parties by their conduct or their silence may waive a right to trial by jury. *Baird* v. *The Mayor,* 74 N. Y. 382, 386; *The Brooklyn &c. R. Co.* v. *R. Co.,* 105 App. Div. (N. Y.) 88; *Book* v. *Justin Min. Co.,* 58 Fed. Rep. 827.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Appeals affirming a decree of the Circuit Court for the Southern District of Georgia, adjudging an advance in freight rates made by appellants to be effective June 22, 1903, upon yellow pine lumber of two cents per one hundred pounds over rates previously in force, to be unjust and unreasonable, and enjoining

the appellants, jointly and severally, from maintaining the same, "in so far as they apply to shipments of lumber from points in Georgia to Ohio River destinations and points basing thereon."

The original bill was filed April 14, 1903, by appellees to enjoin such advance in rates and a temporary restraining order was issued and notice to appellants to show cause why an injunction should not issue. On May 8 the bill was amended. On May 12 the appellants filed a demurrer to the amended bill for want of jurisdiction in the court as a court of equity and as a court of the United States, and the Southeastern Freight Association filed an answer. Appellants also filed a response to the order to show cause. On May 16 the demurrer was overruled. The temporary injunction was, however, dissolved, but the following condition was expressed:

"In case the respondents shall enforce the rates complained of, and the complainants shall make proper application to the Interstate Commerce Commission to redress their alleged grievances, the court will entertain a renewed application on the record as made, and such appropriate additions thereto as may be proposed by either party, enjoining the enforcement of such rates, pending the investigation of the Commission, unless otherwise dissolved, and on presentation to the court of the report of the Commission such other action be taken as will be conformable to law and the principles of equity." 123 Fed. Rep. 789.

The appellants took the steps prescribed by the Interstate Commerce Act to put the advanced rates into effect, and the appellees, on June 23, 1903, filed a petition before the Interstate Commerce Commission, charging that "in promulgating said tariff of increased rates and maintaining and enforcing the same" the appellants were acting "in concert with each other and with other lumber carrying roads," who with them were "co-members of the Southeastern Freight Association." The petition also charged that the advance was "arbitrary, unreasonable and unjust," and prayed for an order commanding

appellants, and each of them, to desist from enforcing the advance. All of the appellants except the Macon and Birmingham Railway Company filed a joint and several answer, in which they traversed the allegations of the petition and pleaded justification by the conditions affecting the roads and the traffic. They also alleged that the Georgia Saw Mill Association, to which appellees belonged, was a combination in restraint of trade and commerce, and that, therefore, appellees did not " come before the Commission with clean hands." A great deal of testimony was taken on the issues presented, and the Commission found and concluded that the advance in rates "was not warranted by the testimony, and that the increased rates put in force June 22, 1903, were unreasonable and unjust." The specific findings and conclusions of the Commission are reported in 10 I. C. C. R. 548. After the petition was filed before the Interstate Commerce Commission, but before final action, appellees filed an amended bill and again moved the Circuit Court for an injunction. In the amended bill it was alleged that appellants, after the dissolution of the restraining order, filed with the Interstate Commerce Commission and gave public notice that on June 22, 1903, the advance in sales on lumber would be established and put in effect, and such advance became effective June 22, 1903. The appellants in a joint and several answer admitted the averments of the amended bill, but reserved the benefit of their demurrer to the original bill. The motion for an injunction was dismissed. 125 Fed. Rep. 789.

The Commission made its order hereinbefore referred to on the seventh of February, 1905, and on March 17, 1905, the appellees presented a petition to the Circuit Court stating the substance of the findings of the Commission and attaching a copy of its report and opinion.

An order to show cause was issued. On June 3, 1905, appellants filed a joint and several answer, which was verified. The Southeastern Association answered separately. The appellees also filed a supplemental bill, the purpose of which

was to obtain restitution of the excess of rates charged over those which it was alleged were unreasonable. To this bill a demurrer was filed.

It was stipulated by counsel of the respective parties that the testimony, including exhibits, taken before the Interstate Commerce Commission, should be filed in the case subject only to objections to its relevancy. In addition to such testimony other evidence was submitted to the Circuit Court, and that court rendered a decree July, 1905, that the advance in rates "from lumber shipping points within the State of Georgia to Cincinnati, Louisville, Evansville, Cairo and other points on the Ohio River or crossings was and is excessive, unreasonable and unjust, and in violation of the provisions of the act of Congress, known as the Act to Regulate Commerce, and the amendments thereto, and that the rates and charges resulting from said advance are likewise excessive, unreasonable, and unjust, and in violation of the Act to Regulate Commerce." The appellants were enjoined, as we have already said, from enforcing the advance.

The decree also directed an order of reference to the standing master of the pleadings and evidence in the cause, with instructions to ascertain the sum total of the increase in rates paid by each of the appellees and other members of the Georgia Saw Mill Asociation to either or all of the appellants since the rate went into effect. This was done, the decree recited, in pursuance of a stipulation made by the respondents (appellants) in open court that in case the complainants (appellees) prevailed decree of restitution might be made. 125 Fed. Rep. 753. The decree was affirmed by the Circuit Court of Appeals without an opinion.

On the merits, as distinguished from the questions which concern the jurisdiction and procedure in the Circuit Court, this case is, though variant in some detail of facts, similar in principle and depends upon the same legal considerations as *Illinois Central Railroad Company* v. *The Interstate Commerce Commission,* just decided. The advance here involved grew

out of the same action by the railroads there considered, and is the advance there referred to as having been made west of the Mississippi. This case was argued and submitted with that and depends on the same ultimate contentions. We need not repeat the discussion of those contentions nor trace out or dwell upon the many subsidiary considerations which the assignments of error and the elaborate briefs of counsel present.

In the case at bar, however, there are assignments of error based on the objections to the jurisdiction of the Circuit Court. These might present serious questions in view of our decision in *Texas & Pacific Railroad Company* v. *Abilene Cotton Oil Company*, 204 U. S. 426, upon a different record than that before us. We are not required to say, however, that because an action at law for damages to recover unreasonable rates which have been exacted in accordance with the schedule of rates as filed, is forbidden by the Interstate Commerce Act, a suit in equity is also forbidden to prevent a filing or enforcement of a schedule of unreasonable rates or a change to unjust or unreasonable rates. The Circuit Court granted no relief prejudicial to appellants on the original bill. It sent the parties to the Interstate Commerce Commission, where, upon sufficient pleadings, identical with those before the court, and upon testimony adduced upon the issues made, the decision was adverse to the appellants. This action of the Commission, with its findings and conclusions, was presented to the Circuit Court, and it was upon these, in effect, the decree of the court was rendered. There was no demurrer to that petition, and the testimony taken before the Commission was stipulated into the case, and the opinion of the court recites that, "with equal meritorious purpose, counsel for the respective parties, agreed that this would stand for and be the hearing for final decree in equity."

It was certainly competent for the appellees to proceed in the Circuit Court under section 16 of the Interstate Commerce Act (24 Stat. 379) and to apply by petition to the Circuit Court, "sitting in equity," for the court to hear and determine

the matter "as a court of equity," and issue an injunction "or other proper process, mandatory or otherwise," to enforce the order of the Commission. We think that under the broad powers conferred upon the Circuit Court by section 16 and the direction there given to the court to proceed with efficiency, but without the formality of equity proceedings, "but in such manner as to do justice in the premises," and in view of the stipulation of the parties, recited in the decree of the court, the appellants are precluded from making the objection that the court did not have jurisdiction to entertain the petition and grant the relief prayed for and decreed.

But objection is made to the extent of the decree. Indeed, the objection may be said to go farther back, and is based on the bill itself, on the ground that "pecuniary reparation was demanded" in it, and "such payment necessarily involves a trial by jury, guaranteed by the Constitution of the United States." And further, that each complainant is separately interested in any amount which may be recovered. The specific part of the decree which is objected to is as follows:

"Third. That an order be taken referring to the standing master of this court, J. N. Talley, Esquire, the pleadings and evidence in this cause, with instructions to ascertain the sum total of the increase in rates paid by each of the complainants and other members of the Georgia Saw Mill Association to either or all of the defendant companies, since the rate went into effect, and to the end of the litigation, and report such amount to the court in order that pursuant to the stipulation made by the respondents in open court, in case the complainants prevailed, decree of restitution may be made."

. The errors assigned against this part of the decree are (a) That there is nothing in the pleadings or the evidence to justify any reference. (b) The master should only have been ordered to ascertain the sum total of the advance paid by each of the appellees as is unreasonable and unjust. (c) That no members of the Georgia Saw Mill Association except the complainants (appellees) had themselves made parties to the cause prior

to the rendition of the decree of July 8, 1905, and, therefore, no reference should have been made to ascertain the amounts paid by such other members. (*d*) The master should not have been ordered to report any amount at all. (*e*) No stipulation was made by appellants that a decree of restitution should be made except "in the event that complainants (appellees) finally prevail, and whether they finally prevail cannot be known until the determination of this appeal."

In support of these contentions appellants rely on *Texas & Pacific Railway* v. *Abilene Cotton Oil Company, supra.* In that case the Abilene Cotton Oil Company sued in one of the courts in Texas to recover the excess of what, it alleged, to be an unjust and unreasonable charge on shipments of carloads of cotton seed. The defense was that the rates were charged according to the schedule of rates filed under the Interstate Commerce Act, and that the court had no jurisdiction to grant relief upon the basis that the established rate was unreasonable, when it had not been found to be so by the Interstate Commerce Commission. The defense prevailed in the trial court but did not prevail in the Court of Civil Appeals, where judgment was rendered in favor of the cotton oil company. The judgment was reversed by this court on the ground that the state courts had no jurisdiction to entertain a suit based on the unreasonableness of a rate as published in advance of the action of the Interstate Commerce Commission adjudging the rate unreasonable. And it was in effect held that reparation after such action for the excess above a reasonable rate must be by a proceeding before the Commission, "because of a wrong endured during the period when the unreasonable schedule was enforced by the carrier and before its change and the establishment of a new one." There is nothing in that case, however, which precludes the parties, after action by the Commission declaring rates unreasonable, from stipulating in the proceedings prosecuted under section 16 that the court adjudge the amount of reparation. By the action of the Commission the foundation for reparation, as

provided in the Interstate Commerce Act, was established, and the inquiry submitted to the court was but of its amount, and had the natural and justifiable inducement to end all the controversies between the parties without carrying part of them to another tribunal. We do not understand that the assignment of errors questions the truth of the recital in the decree that the reference was made in pursuance of the stipulation in open court, and it is upon the stipulation we rest our decision. It is said, however, that it was stipulated that restitution should only be made in the event the appellants prevailed. Necessarily it was so dependent. So was every part of the relief prayed by the appellees. The decree was the first judgment that they should prevail, and properly provided for the satisfaction of all the relief dependent upon their success. Of course, what was granted by the decree was subject to review and change or defeat in the Circuit Court of Appeals and in this court. But it equally was subject to affirmance, and was put in such form and made such provision as made it ready to be executed upon affirmance.

The objection that the reference is too broad is not of substance. What the court may award upon the coming in of the report of the master we cannot know. Presumably it will make the reparation adequate for the injury, and award only the advance on the old rate and to those who are parties to the cause.

*Decree affirmed.*

Mr. Justice Moody took no part in the decision of this case.
Mr. Justice Brewer dissents.