KALISPELL LUMBER CO. et al. v. GREAT NORTHERN RY. CO.

(Circuit Court, D. Montana. December 4, 1907.)

No. 852.

1. COURTS—JURISDICTION OF FEDERAL COURTS.

A suit in equity against a railroad company to enjoin the enforcement of a schedule of freight rates which has been filed by defendant with the Interstate Commerce Commission, and which is alleged to be unjust and unreasonable, until the legality of such rates can be passed upon by the commission, is one arising under the laws of the United States and for the enforcement of such laws, of which the federal courts have exclusive jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 830.

Jurisdiction in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.]

2. SAME—VENUE—SUIT BASED ON INTERSTATE COMMERCE ACT.

A suit to enforce rights given by the interstate commerce act may be brought in any federal district where the defendant can be found.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 810.]

3. INJUNCTION—CARRIERS—INTERSTATE COMMERCE—ENFORCEMENT OF SCHEDULE OF RATES FILED.

Although an action at law for damages cannot be maintained to recover unreasonable railroad charges exacted in accordance with the schedule of rates as filed with the Interstate Commerce Commission, a Circuit Court of the United States may entertain a suit in equity to enjoin the enforcement of a schedule of unreasonable rates or a change to unjust or unreasonable rates pending a decision thereon by the commission.

In Equity. Suit for injunction.

John Lind, A. Ueland, and H. D. Folsom, Jr., for complainants.
I. Parker Veazey, for defendant.

HUNT, District Judge (orally). Complainants are citizens of Montana, engaged in the business of manufacturing lumber in Flathead county, Mont. Defendant is a citizen of Minnesota and a common carrier. The bill alleges, in substance, that complainants have invested large amounts in the acquisition of timber and the establishment of mills for manufacturing lumber in Flathead county; that they have been engaged in the lumber business for a number of years last past; that their investments have been made and their business has been built up in reliance upon the permanency of reasonable freight rates for the transportation of the products of their mills to the markets of the state of North Dakota. It is alleged that the rates which were in force for many years prior to November 1, 1907, have been reasonable and just, but that defendant, pretending to exercise its power to make and modify transportation rates over its railroad to the Dakota markets, upon November 1st established and is now enforcing a schedule of extortionate rates between points in Flathead county, Mont., and the markets in Dakota; that such rates were not established to secure just and reasonable rates for the services rendered by the defendant as a carrier, but for the purposes of extortion, and to further defendant's interests as a private manufacturer at the expense of complainants, and to deprive complainants of their market, and to restrain competition, and to create monopoly.

The allegations of the complaint are supported by affidavits filed, and it appears that the rates which defendant is now enforcing have increased the former rates from 20 to 30 per cent., and will very seriously injure, if not entirely destroy, complainants' business. It is alleged that defendant has owned, and still owns, the capital stock of the John O'Brien Lumber Company; that this corporation carries on a lumber business in said Flathead county on defendant's railroad line, and has large mills for the manufacture of lumber; that the lumber so manufactured by such corporation is shipped by defendant company, and, to a large extent, is sold by defendant, in the Dakota markets in competition with complainants and other manufacturers in Flathead county; and that defendant, by means of the increased rates, has sought to depress the business of complainants and other manufacturers, and to depress and lower the value of timber and stumpage in said Flathead district, so as to be able to acquire the same at less cost for its own said manufacturing business.

Complainants say that they are advised that it will take several months before relief can be had from the Interstate Commerce Commission, to which tribunal counsel state they are about to apply, and that if defendant is permitted to exact rates prescribed by its tariff put into operation November 1, 1907, until the reasonableness thereof has been passed upon by the Interstate Commerce Commission, the damage will be of such a nature that it cannot be established and recovered under the provisions of the act to regulate commerce, or the acts supplementary thereto and amendatory thereof. Complainants pray for

an order temporarily restraining defendant from putting into effect, or continuing in effect, the advance in rates of freight on lumber and other forest products from the Flathead district, in Montana, and especially to points in North Dakota west of Devils Lake.

The defendant company, by way of special appearance, and as cause why the writ prayed for should not be issued, alleges that the court is without jurisdiction, in that the matters in dispute arise under the laws of the United States, and involve a judicial interpretation of the provisions of the interstate commerce law; that complainants seek to enforce the provisions of the act of Congress known as the "Anti-Trust Law"; that jurisdiction is not founded only on the fact that the action is between citizens of different states; that defendant, being a Minnesota corporation, and resident and citizen of the district of Minnesota, can only be proceeded against in the United States judicial district whereof defendant is an inhabitant; that the bill shows that the freight rates, which were in force prior to the 1st of November, 1907, have been lawfully superseded, and that the rates complained of have been lawfully established and filed with the Interstate Commerce Commission, and that no application or complaint has been made by complainants to the Interstate Commerce Commission, for the purpose of having the reasonableness of said rates determined, and that defendant cannot lawfully charge or collect any freight rates for the transportation of the commodities referred to in said bill if the court shall prohibit the collection of the only lawful rates; that complainants do not allege or show any insolvency of defendant, and that a plain and adequate remedy at law exists by action for damages.

After hearing the very clear and helpful arguments of the learned counsel upon both sides of this matter, and after carefully reading the decisions cited by them, my conclusions, briefly stated, are these:

It is not necessary to decide at this time whether a bill in equity may be well predicated, independently of the provisions of the interstate commerce act, upon the misconduct of a carrier in the doing of acts which are also condemned by the provisions of that act; for here it appears that the bill is one where complainants have set forth a cause of action which fairly demands construction of the provisions of the interstate commerce act, and hence the question of jurisdiction should be considered and determined with relation to the subject-matter of the bill as well as of the parties. My view is that the jurisdiction of the court is properly invoked, not as existing concurrently with that of the courts of the state, but as being exclusive, because the matter directly connected with the subject-matter is the right of complainants to have their lumber hauled at a just and reasonable rate for the service rendered by defendant as a carrier, and because the object of the suit is to obtain an order which will prevent defendant from enforcing, until the Interstate Commerce Commission can hear and decide the complaint of complainants, a schedule of rates which, under the allegations of the bill, is extortionate, unjust, and unreasonable.

Compliance with the purposes of the interstate commerce act, and enforcement of its provisions, are the remedies sought. The case is one arising under the laws of the United States, directly involving rights to which complainants allege they are entitled under such laws,

and which are denied to them by defendant, and the determination of the rights must depend upon the construction of such laws. In re Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110; Sheldon v. Wabash Railroad Co. (C. C.) 105 Fed. 785. Jurisdiction is therefore in the federal courts alone, and defendant may be sued where it can be found. Van Patten v. Railroad Co. (C. C.) 74 Fed. 981; Westinghouse Air-Brake Co. v. Great Northern Ry. Co., 88 Fed. 258, 31 C. C. A. 525.

If I am right in holding that the court has power to hear complainants, and to grant them relief upon a proper showing, then the case made by the bill and affidavits in support thereof, which are not denied, is strong enough to compel a conclusion that the collection of the freight rates in excess of those in existence for years prior to November 1, 1907, should be enjoined until the Interstate Commerce Commission can act, provided defendant is fully protected by bond to be given by complainants. True, as laid down by the great opinion of Justice White in Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, complainants would not be allowed to bring action at law for damages to recover unreasonable rates that may have been exacted in accordance with the schedule of rates as filed; but, even so, the federal courts are not forbidden to hear applications for orders to restrain the enforcement of collection of unjust and unreasonable rates, pending action by the Interstate Commerce Commission, if a sufficient showing of injustice and unreasonableness of the rates charged is made, and if it appears that appreciable delay will be had before the Interstate Commerce Commission can possibly act upon complaint about to be filed before that body, and that, unless such order is issued, very great injury will be done by allowing the unreasonable and unjust rates to be collected.

If the syllabus of the case of Southern Railway Co. v. Tift, 206 U. S. 428, 27 Sup. Ct. 709, 51 L. Ed. 1124, in the official reports of the Supreme Court, is wholly accurate, these complainants are clearly justified in asking the relief they seek by their bill, for the reporter regards the rule of that case as establishing that:

"Although an action at law for damages to recover unreasonable railroad rates which have been exacted with the schedule of rates as filed is forbidden by the interstate commerce act, the Circuit Court may entertain jurisdiction of a bill in equity to restrain the filing or enforcement of a schedule of unreasonable rates or a change to unjust or unreasonable rates."

But, as I read the opinion of the court, the point upon which the present application turns for decision is expressly reserved as one never passed upon. Relief by injunction ought not to be given, except where the showing is clear that great injustice would be done by obliging a complainant to submit to unjust rates until the Interstate Commerce Commission can act. As I have indicated, however, when it appears that enforcement of the schedule of rates will be followed by practical and immediate destruction of the business of a large number of persons, in that it will prevent their putting their products into markets upon which they have been and are largely dependent, and where it appears that the changed rates are extortionate and unreasonable, relief in equity may be granted merely until the Interstate Commerce

Commission shall have adjudged the rate to be unreasonable or otherwise.

Complainants will be directed to give bond in a sum sufficient to protect the railroad company from any possible loss, if it shall be determined by the Interstate Commerce Commission that the schedule of rates is not unjust or unreasonable.   Counsel can submit a form of order.