TIFT et al. v. SOUTHERN RY. CO. et al.

(Circuit Court, S. D. Georgia, W. D. January 14, 1908.)

1. EQUITY—PARTIES—INTERVENTION.

A court of equity, until its final and conclusive decree, has power to afford redress to every litigant who, because of the wrong he has sustained, is entitled to participate in a fund unlawfully wrung from him by the defendants, of which the court has jurisdiction, not only to avoid a multiplicity of suits and because he has no adequate remedy at law, but because he is a proper party to the suit; he being entitled, without regard to the amount of his claim or the locality of his residence, to intervene by petition in his own behalf.

2. SAME—PERSONS ENTITLED TO INTERVENE.

A bill having been filed by certain shippers to restrain the filing and enforcement of a schedule of unreasonable lumber rates promulgated by an association of railroads, the court denied an injunction pendente lite on the railroads' agreement, in the event that the rates should be finally determined to be excessive, to repay such excess to the complainants.

The rates having been so declared, the railroads filed a supersedeas bond of $500,000, and appealed to the United States Supreme Court, where the decision was affirmed. *Held*, that the railroad companies. after such affirmance, were not entitled to contest the right of each shipper other than the complainants to recover for overcharges made under such excessive rates in a separate suit, but that other shippers who had paid excessive charges under such rate were entitled to intervene and share in the fund which the railroads were bound to pay into court for the settlement of such claims.

Motion to Annul Order of Reference.

W. A. Wimbish, for complainants.
Albert S. Brandeis, for defendant Louisville & N. R. Co.
John I. Hall, for defendant Georgia Southern R. Co.
Merrill P. Callaway, for defendant Southern R. Co.

SPEER, District Judge. The question before the court is presented on a motion of Albert S. Brandeis, general solicitor for the Louisville & Nashville Railroad Company. With Mr. Brandeis appear on the record quite a number of solicitors, to wit, for the Nashville, Chattanooga & St. Louis Railroad Company, for the Seaboard Air Line Railway Company, for the Atlantic Coast Line Railroad Company, for the Central of Georgia Railroad Company, for the Georgia Southern & Florida Railroad Company, and for the Southern Railway Company. The motion is made to modify an order, filed on the 31st of August, 1907, and, so far as it may be modified, that it be "set aside and held for naught the same as if it had never been passed." It is made in the case of Tift et al. v. Southern Railway Company et al., 138 Fed. 753.

This was a bill in equity to restrain the filing and enforcement of a schedule of unreasonable rates. Without attempting an extended history of this important litigation, it will suffice to say that, pending the application for an injunction, a proposition was made in judicio by the general counsel representing the numerous defendant corporations, for whom Mr. Brandeis now appears, substantially to the effect that if the court would refuse the injunction, and allow the rates to stand and be collected by the railroad companies, his clients would repay the sum of such excess charges to the complainants, in case the latter should prevail in their suit. This proposition was regarded as equitable by the court, was approved, and the injunction sought to restrain the collection of the rates, in consideration of the promise, was denied. The court, by suitable orders and conditions therein, invoked the assistance of the Interstate Commerce Commission to determine whether or not the excessive rates, which amounted to two cents a hundred pounds on all lumber shipped to Ohio river points and northward, were in fact arbitrary and excessive. All the parties went before the commission. After inquiry, that honorable body, in an elaborate opinion upon the facts, held that the rates complained of were so excessive as to be in violation of law. Complainants then renewed before this court their application for an injunction, and submitted the report of the commission. It was agreed by counsel that all of the evidence submitted before the commission should be admitted as original evidence before this court. This was done. Both sides were, however, permitted to

introduce other evidence. Treating the report of the commission as prima facie correct, and in no sense contradicted by the other evidence and testimony submitted, the court in its final decree held the rates to be arbitrary and excessive, and, in view of the stipulation of the defendants' counsel aforesaid, also held that restitution of the amounts thus illegally exacted should be made. The facts and principles of law determined may be found in the case of Tift et al. v. Southern Railway Company et al. (C. C.) 138 Fed. 753, and in the decision of the Supreme Court, on appeal between the same parties, affirming the same, 206 U. S. 428 et seq., 27 Sup. Ct. 709, 51 L. Ed. 1124, opinion by Mr. Justice McKenna.

On the return of the mandate of the Supreme Court, this court, in order to make its decree for restitution effective, passed the order following:

"Upon motion of counsel for the complainants in the above-entitled cause, it is ordered:

"First, that leave to intervene is hereby granted to the following classes of persons, to wit: (1) The complainants to the original bill in said cause. (2) Members of the Georgia Sawmill Association at the date of the filing of the original bill in said cause and subsequent thereto. (3) Members of the Georgia-Florida Sawmill Association, which is represented to be the successor of the Georgia Sawmill Association. (4) Other shippers of lumber from points of origin to points of destination affected by the advance in rates made effective June 22, 1903. Subject to the right of the defendants to contest the propriety of the interventions referred to in clause 4 of this order, the justness of the claims filed, or their liability for interest.

"Second, that the classes of persons named in the first paragraph of this order may file their interventions herein in the clerk's office of this court; that as said interventions are filed the master in said cause is hereby authorized to receive the petitions of intervention subject to the matter of reference in said cause.

"Third, that in prosecuting the reference contained in the final decree in the said above-described cause, which decree is dated July 8, 1905, the master is directed to investigate and report the amount, with interest at the legal rate, separately stated, of the just claims of the classes of person named in paragraph 1 hereof.

"Fourth, for the purposes of the investigation required by the reference in said final decree and this order, the master is hereby authorized to hear evidence within or without this district, to subpœna witnesses, to compel the production of papers and documents, and to exercise such other authority as may be expedient and necessary to a full and complete investigation and report."

As stated during the argument of Mr. Brandeis, the words, "subject to the right of the defendants to contest the propriety of the interventions referred to in clause 4 of this order, the justness of the claims filed, or their liability for interest," were intended by the court to leave each claim open to any defense usual in such cases. The present effort to modify or reverse this order would, if successful, annul the decision of the Supreme Court, and defeat the substantial purpose of the entire litigation. It is strenuously insisted in support of the motion to modify the order that it permits those who were not parties to the cause at the time it was brought to come now by intervention and ask that their claims may be heard. It is insisted that those not parties to the original bill should bring separate proceedings, and that the defendant companies, should, as to each, have the right to utilize all of the de-

fensive tactics which might be available if such separate claims were brought. Great stress is laid upon the final expression of Justice Mc-Kenna, in the opinion of the Supreme Court in this case, as follows:

"What the court may award upon the coming in of the report of the master we cannot know. Presumably it will make the reparation adequate for the injury, and award only the advance on the old rate, and to those who are parties to the cause."

It is urged that this is conclusive that no other parties save the original complainants can now intervene in the principal suit and have their claims against either or all of these combined railroads heard. It is very clear, however, that the question of who are proper parties to this litigation was not before the Supreme Court, and is, therefore, not determined by this closing sentence of the opinion. If this had been true, and if the expression of Justice McKenna could properly be construed to import that they only are parties who actually joined in the original bill, the contention of Mr. Brandeis would seem unanswerable.

If each complainant against the unlawful exactions of the combined railroads must have been heard separately, as now insisted, the case before the court, which has been sustained by every United States court having jurisdiction, could not have been entertained for a moment. In contemplation of equity, there is here a fund for distribution among the parties plaintiff. We are perhaps not at liberty to ignore the supersedeas bond of $500,000, filed by the defendant companies. This is obviously subject to the proper and just demands of the plaintiffs, which may be ascertained by the master and approved by the court. There is, however, another and a not less important pledge, or even trust, in the control of the court. It is the sum total of the excessive rates on lumber, unlawfully exacted from the shippers by the combined defendant companies, terming themselves the "Southeastern Freight Association." These companies promised in open court to pay this sum. All parties were present or represented. They promised to pay it in case the complainants prevailed, provided the court would withhold its injunction and allow them to collect the rates. This was done. They did collect these illegal rates, not only from the shippers who were the original complainants, but presumably from many others, and from other states. This was done even after the final determination of the supreme appellate court of the land that such collection was in violation of public law, and after its mandate had been made the judgment of this court.

Now, who are parties complainant to such a suit in equity, still pending, with all of its original powers to compel obedience to its injunctive process, and restitution to each one his share of a fund, thus accumulated? Whatever may be the archaic doctrines of pleading, which were announced at periods in the history of jurisprudence when facts like those before this court were neither possible nor comprehensible, in these days a court of equity has, and must have, if it be worthy of its mission, until its final and conclusive decree, the power to afford redress to every litigant, who because of the wrong he has sustained is entitled to participate in a fund unlawfully wrung from him and from others in like case. Not only to avoid a multiplicity of suits (U. S. v. Union Pacific Ry. Co., 160 U. S. 1, 50, 52, 16 Sup. Ct. 190, 40 L. Ed. 319;

Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 460, 10 Sup. Ct. 462, 33 L. Ed. 970), not only because there is no adequate remedy at law (Van Patten v. Chicago, M. & St. P. Ry. Co. [C. C.] 81 Fed. 545, 551), but because he is a proper party to the suit, without regard to the amount of his claim, and to the locality in which he resides, he may intervene by petition interesse suo, and ask his share of the fund in the hand of the court, or which the defendants are obliged to put there. "When any person," says Mr. Daniel in his Chancery Practice (chapter 26, par. 7, p. 1057), "claims to be entitled to an estate or other property sequestered, whether sequestered, whether by mortgage or judgment, lease or otherwise, or has a title paramount to the sequestration, he should apply to the court to direct an inquiry whether the applicant has any and what interest in the property sequestered. This inquiry is called an examination pro interesse suo, and an order for such an examination may be obtained by a party interested as well where the property consists of goods and chattels or personalty as where it is real estate." See Krippendorf v. Hyde, 110 U. S. 283, 4 Sup. Ct. 27, 28 L. Ed. 145. This may be done at any time, pending the litigation, and before the final decree, if in the discretion of the court it is permissible. Said the Supreme Court of the United States in Ex parte Jordan, 94 U. S. 248, 24 L. Ed. 123, Chief Justice Waite speaking for the court:

"It is true that the petitioners were not parties to the suit until after the bill was taken as confessed; but it is clear that the decree pro confesso did not end the case, because, before the final decree was rendered, it was found necessary to have the reference before a master, to compute, ascertain, and report. Before the master could comply with this order, proof had to be taken. * * * When this reference was made, the petitioners were defendants and actors in respect to the litigation. They certainly had the right to contend before the master, and to except to his report."

There the interveners were not only permitted to come in after decree pro confesso, in the same manner and with like effect as if named in the original bill, but where the Circuit Court who heard their intervention refused their appeal, the Supreme Court issued its mandamus to compel the allowance of the appeal. The interveners, therefore, have every right, even to the ultimate, of the original complainants. It is analogous to the rule in admiralty, which provides that any person having an interest in any proceeds in the registry of the court shall have the right by petition and summary proceeding to intervene pro interesse suo, for the delivery thereof to him, and upon due notice to adverse parties, if any, the court shall, and may, proceed summarily to decide thereon, and decree therein according to law and justice. The utilization of this remedy in cases of insolvent corporations is widely practiced. Besides, whatever might be objected as to the rights of the interveners in other cases must fail here. Said Associate Justice McKenna, in rendering the opinion in this case (206 U. S. 440, 27 Sup. Ct. 709, 51 L. Ed. 1124):

"We do not understand that the assignment of errors questions the truth of the recital in the decree that the reference was made in pursuance of the stipulation in open court, and it is upon the stipulation we rest our decision."

As before stated, this stipulation created the fund for distribution. The fund is here. What recourse adequate at law is there, then, for a shipper in Alabama, Florida, or elsewhere, if we are to shut the door of this court in his face? There is no such stipulation elsewhere, and no fund elsewhere, which constitutes the sum total of all the moneys which have been illegally gathered from those engaged in perhaps the greatest shipping industry of the Southern States by the railway companies composing the Southeastern Freight Association. While we do not, and never will, join in the senseless and selfish crusade against the great lines of railway, which have done so much toward the happiness, improvement, and enrichment of mankind, after all it is occasionally true that they accomplish great wrongs. Their officers are sometimes afflicted with the errors of judgment common to an imperfect humanity. It is not always an equal contest between a private citizen, even where he has a right, and the organized powers of a great railway or combination of railways; and courts should not be solicitous by strained and technical construction of the rules of pleading to defeat the right of a person, especially where it has been substantially determined as just by all the authorized powers of the government intrusted with that duty.

For these reasons, the court feels obliged to deny the motion, so attractively presented by the solicitor for the Louisville & Nashville Railroad Company. If counsel agree, the master may, if he thinks proper, file separate reports upon the claims of the interveners of the separate and distinct classes, so that the rights of those holding undisputed claims need not necessarily be complicated by the desire of a defendant, or defendants, to litigate the claims of others.