## HOWARD SUPPLY CO. v. CHESAPEAKE & O. RY. CO.

(Circuit Court, S. D. West Virginia. April 14, 1908.)

1. CARRIERS—INTERSTATE COMMERCE—RATES—REVIEW BY INTERSTATE COMMERCE COMMISSION—ACTIONS—CONDITION PRECEDENT.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act Cong. June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1907, p. 902), provides that if, after

hearing on a complaint by shippers, the commission shall determine that any party is entitled to an award of damages for a violation of the act, the commission shall direct payment thereof, and if the carrier does not pay within the time limited in the order the complainant may sue to recover such damages, and in such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated. All complaints for the recovery of damages are also required to be filed with the commission within two years after the cause of action accrues, and a petition for the enforcement of an order within one year after the date of the order. *Held*, that an action by an interstate shipper to recover damages for a charge of illegal and excessive rates is not maintainable until after a hearing and award before the Interstate Commerce Commission.

**2. SAME—PRIOR DECISION.**

Where an interstate rate on railroad ties, duly filed, had never in itself been declared illegal or excessive by the Interstate Commerce Commission, the fact that such rate was higher than the rate charged for rough lumber, and that the commission in another proceeding had determined that rough lumber and railroad ties should take the same classification, was insufficient to entitle a shipper having paid the tie rate to recover the excess over the rate fixed for lumber, without a hearing and an award before the commission.

In Assumpsit.

George J. M. Comas, for plaintiff.
F. B. Enslow, for defendant.

KELLER, District Judge. This is an action of assumpsit by the Howard Supply Company, a corporation, against the Chesapeake & Ohio Railway Company, to recover alleged overcharges of freight on shipments of railroad cross-ties by the plaintiff over the line of defendant from various points in the state of Kentucky to Kenova and Huntington, W. Va., and thence over the Baltimore & Ohio Railroad to Pittsburg and other points in the state of Pennsylvania. The plaintiff bases its right to a recovery on the ground that the rate exacted by the defendant on the cross-ties shipped by the plaintiff was unjust, unreasonable, and discriminatory, and in violation of the interstate commerce acts, in this: That the published schedule rates of the defendant on cross-ties was higher than the rate on rough lumber, when, under the rulings of the Interstate Commerce Commission, cross-ties and rough lumber should be classified alike, and the same rate charged for shipments between the same points. The plaintiff paid the rate exacted by the defendant on the cross-ties shipped by it, and it now seeks to recover the difference between the amount so paid and the published rate on rough lumber. This case was submitted to me upon an agreed statement of facts, with the jurisdiction undetermined and questioned by the defendant.

The facts agreed upon, in so far as it is necessary to state them here, are these: During the period in which the plaintiff made the shipments aforesaid, to wit, from May, 1904, to December 5, 1906, the defendant was owning and operating a railroad and engaged in the business of a common carrier in receiving and transporting over its road interstate shipments, including lumber and railroad cross-ties, from various points between Lexington and Catlettsburg, Ky., into the state of West Virginia, at Huntington and Kenova, at which points

the railway of the defendant connects with the Baltimore & Ohio Railroad. During said period the plaintiff was engaged in the business of buying and dealing in railroad cross-ties, between Lexington and Catlettsburg, Ky., and shipping the same over the railway of the defendant from various points between Lexington and Catlettsburg to Kenova and Huntington, W. Va., and thence over the line of the Baltimore & Ohio Railroad Company to Pittsburg and other points in Pennsylvania. The plaintiff during said period shipped 37,100,000 pounds of cross-ties from said points in Kentucky, via Kenova and Huntington, to Pittsburg and other points in Pennsylvania, and paid freight thereon at the rate of 17 cents per 100 pounds. During said period the established rate on sawed lumber, from points on the defendant's line between Lexington and Catlettsburg, Ky., to Pittsburg, Pa., was 14 cents per 100 pounds, of which rate the defendant received 4.71 cents and the Baltimore & Ohio Railroad received 9.29 cents; and during all of said period the established and published rate of the defendant on cross-ties from the said points in Kentucky to Kenova and Huntington was 7 cents per 100 pounds, and the established and published rate thereon of the Baltimore & Ohio Railroad from Kenova and Huntington to Pittsburg and other points in Pennsylvania during said period was 10 cents per 100 pounds. These rates on cross-ties and on lumber were duly established by these two railway companies, and were posted, published, and filed, as required by the interstate commerce acts and the rules of the Interstate Commerce Commission, and these rates were never passed upon or changed by the Interstate Commerce Commission, and they applied to all shippers between said points. The question of the right of the plaintiff or other shippers from Kentucky points to Pittsburg, over the line of defendant and the Baltimore & Ohio Railroad, via Kenova and Huntington, to have cross-ties shipped at the lumber rate of 14 cents per 100 pounds, has never been passed upon or considered by the Interstate Commerce Commission, nor has the rate of 7 cents over the line of defendant plus 10 cents over the line of the Baltimore & Ohio Railroad on ties ever been passed upon or declared unjust or unreasonable by the Interstate Commerce Commission. But the Interstate Commerce Commission did decide, in the case of Thomas J. Reynolds v. Western N. Y. & P. Railroad, 1 Interst. Com. Rep. 685, that rough lumber and railroad ties should be classed alike, and that any charges upon ties greater than that charged for rough lumber between the same points was in that case excessive and unreasonable.

The foregoing being the agreed facts in this case, the defendant contends that this court has not jurisdiction to try and determine the matters of which the plaintiff complains, on the authority of Texas & Pacific Railway Company v. Abilene Cotton Oil Company, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, which holds that a shipper cannot maintain an action against a common carrier to obtain relief from an alleged unreasonable freight rate exacted from him for an interstate shipment, without reference to any previous action by the Interstate Commerce Commission, where such rate has been filed with that commission and promulgated as provided by the act to regulate commerce.

The plaintiff, while admitting the general proposition that, ordinarily, the Circuit Court has no original jurisdiction of a suit at law to recover damages for an alleged overcharge in freight rates until the Interstate Commerce Commission has passed upon the question of the reasonableness of the rates, yet contended that where the question is one of the relative reasonableness of rates, as in this case, and the Interstate Commerce Commission has once passed upon the same relative classification (although not between the same parties), the Circuit Court is vested with jurisdiction to award reparation by way of damages for a relative overcharge. The defendant contended that, while that decision was conclusive as to that case, it did not settle the question as to all cases, and that the schedule of rates demanded and paid in this case, having been established, posted, published, and filed with the Interstate Commerce Commission, constituted the only legal rates to be charged until they should be declared unjust and unreasonable by the Interstate Commerce Commission, and until an award should be made by that body.

In considering the question here presented I am largely controlled by the opinion of the Supreme Court of the United States in the case of Southern Railway Company v. Tift, 206 U. S. 428, 437, 27 Sup. Ct. 709, 51 L. Ed. 1124, 1126, where the court, in distinguishing the jurisdictional question presented in that case, says:

"In the case at bar, however, there are assignments of error based on the objections to the jurisdiction of the Circuit Court. These might present serious questions, in view of our decision in Texas & Pacific Railway Company v. Abilene Cotton Oil Company, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, upon a different record than that before us  We are not required to say, however, that because an action at law for damages to recover unreasonable rates, which have been exacted in accordance with the schedule of rates as filed, is forbidden by the interstate commerce act, a suit in equity is also forbidden to prevent a filing or enforcement of a schedule of unreasonable rates or a change to unjust or unreasonable rates."

I think Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, 34 Stat. 590 (U. S. Comp. St. Supp. 1907, p. 902), makes it clear that it was the intention of Congress that all parties claiming to be aggrieved by violations of the Interstate Commerce Acts by common carriers must first make application to the commission for an award of damages against the offending carrier, and afterwards apply to the courts for the enforcement of the order of the commission. Section 16 provides in part as follows:

"That if, after hearing on a complaint made as provided in section 13 of this act, the commission shall determine that any party complainant is entitled to an award of damages under the provisions of this act for a violation thereof, the commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named. If a carrier does not comply with an order for the payment of money within the time limited in such order, the complainant, or any person for whose benefit such order was made, may file in the Circuit Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, a petition setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that on the

trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the Circuit Court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as part of the costs of the suit. All complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court within one year from the date of the order, and not after: Provided, that claims accrued prior to the passage of this act may be presented within one year."

I entertain no doubt but that a party aggrieved by the enforcement against his protest of a published rate believed by such party to be unreasonable must, as a preliminary to a suit at law for damages, obtain a finding from the Interstate Commerce Commission of the unreasonableness of the rate, and 'an award of reparation "because of a wrong endured during the period when the unreasonable schedule was enforced by the carrier, and before its change and the establishment of a new one." See Southern Railway Co. v. Tift, 206 U. S. 439, 27 Sup. Ct. 712, 51 L. Ed. 1124. This being my view, it follows that this court has no jurisdiction of this action.

It is therefore ordered that the same be dismissed, without prejudice to the right of the plaintiff to institute any other action or proceeding that it may think proper.