GROSSCUP, Circuit Judge
(orally). The general question involved in this case is this: Can a suit in equity be maintained at the instance of the government, to restrain railroad companies from discrimination in rates?
The bill avers—and this hearing is upon demurrer and motion for an injunction—that such discrimination was practiced in the transportation of grains and of packing house goods; and that in the transportation of grain it had gone so far that each railroad reaching into the grain districts had eliminated all competitive dealers, leaving only a single favored dealer who purchased all the grain at all the stations along the lines of the roads. Of course under such conditions, the grain grower was deprived of the benefit of competition among dealers. The practical effect was the same as if the railroads had established agencies of their own to purchase the grain, and by giving to these discriminatory advantages, had excluded all other grain purchasers from the field. Such a policy necessarily destroys *545 the competition to which the grain growers in a given district are entitled.
Discrimination of this character is, of course, contrary to the plain provisions of the interstate commerce act (Act Feb. 4, 1887, 24 Stat. 379, c. 104 [U. S. Comp. St. 1901, p. 3154]). Upon it criminal prosecutions could be maintained, and each grain grower could individually maintain a civil suit for such damages as he might show. The interstate commerce act in terms, contains these remedies.
But the act, previous to the recent Elkins act (Act Feb. 19, 1903, 32 Stat. 847, c. 708), did not in terms confer jurisdiction over such matters upon a court of equity, and the real questions in this case are: Has a court of equity, under its general chancery jurisdiction, power to remedy the wrongs shown; and can that power be invoked at the instance of the government?
I have no doubt whatever, respecting the first of these questions. The interstate commerce act confers upon each citizen engaged in productive industry, whether manufacturing, commercial or agricultural, within the districts traversed by these roads, the substantive right of having his product transported by the common carriers of the country at rates equal to the rates obtained by his competitor. This right of equal treatment at the hands of the common carriers is as much a right of property, and affects as directly his interest in property as any other right of property that he may have under the law, statutory or common. To enforce such right, there must be somewhere in our system of jurisprudence, the remedy found essential. If an action at law for damages is inadequate, a remedy in equity must exist. The jurisprudence of the country does not leave him remediless.
But actions at law for the injuries described are plainly inadequate. The act of the railroad that affects the grain grower, is not a single unlawful act; he is making shipments today, tomorrow, and next month. The policy of the roads, as shown in the bill, affects him in each of these shipments, and will affect him in all future shipments. His situation is analogous to that of one who is subjected to continuous trespass, and who cannot on that account, in an action on a single trespass obtain ample redress. Nothing short of the prohibitive arm of a court of chancery can give to the grain growers and other producers affected by this policy of the railroads, the free competitive field for the sale of their products to which they are entitled, as a substantive right under the terms of the interstate commerce act. I have no doubt, therefore, that at the instance of some one, a suit in equity will lie to prohibit the further execution of this discriminative policy.
But will it lie at the instance of the government, or must it be brought by the individuals injured? In the determination of this question, a number of considerations bearing upon the subject must be brought together and borne in mind.
The first of these is that this right of the individual under the interstate commerce act, is one obtained under a special statute of the United States government; the next is that the violation complained of is by a common carrier who, to the extent that govern *546 ment may regulate rates and the other incidents of commerce, is a servant of the government; the third is, that the injury to each shipper is so infinitesimal compared with the cost of litigation, that unless there can be a common assertion of right by some one on behalf of all, the right will not be asserted at all; and the fourth is, that the persons affected constitute the entire population of the districts through which the roads run, by reason of which the remedy asked for is in the nature of government for entire population, rather than of individual redress for the injuries done to a person here and there. In my judgment this constitutes a state of fact that gives to the government the right to bring this suit. It is analogous to those equitable actions by which many people, obtaining rights from common sources, may be protected at the suit of such common source; and it finds precedents in cases where the government, in its relation of parent, may assert the rights of the individuals constituting the population to be affected.
In a recent case coming up from Kansas, the Supreme Court denied the right of the government to maintain a suit somewhat similar to this. But in that case, the Interstate Commerce Commission had never granted a hearing, or made an order, in the matters involved. The Commission is the tribunal instituted by the government to inquire primarily into the fact as to whether discrimination exists. To it the shipper can bring his grievance; before it the railroads have a right to be heard. Until an inquiry is there made, and a finding and order had, the jurisdiction of a court of equity may not be invoked, because for the court to take hold, at that primary point in the case, would be to transfer the jurisdiction of the Interstate Commerce Commission—the jurisdiction to first inquire into the facts—to a court of equity. In practical application, it would abolish the Interstate Commerce Commission and devolve upon a Master in Chancery the preliminary inquiry into the facts. Because of this— though the reason is not stated by the court as I have stated it— the Supreme Court held that the suit thus before it, could not pro^ ceed except under the' Elkins act subsequently enacted; but no opinion was expressed upon the right of the government to bring suit in cases where there had been a preliminary inquiry and finding by the Interstate Commerce Commission.
However, the Elkins act makes this discussion largely academic. It is provided in terms, in that act, that the equity jurisdiction of the United Stafes Courts shall be extended to cover just such cases as this, and that suits may be brought by the government at the instance of the Attorney General. The only question left is, whether the act is applicable to a case the substantial facts of which transpired before its passage. The Elkins act is remedial only. It extends the equitable jurisdiction of the court, not to every violation of the interstate commerce law thereafter transpiring, but to every violation, irrespective of whether it transpired previously or subsequently. Such is the construction put upon it by the Supreme Court in the Kansas case referred to.
A decree may be drawn showing that the case came on upon the demurrer filed last Summer, and the motion for a preliminary injunq *547 tion filed last Summer, and that the motion for the preliminary injunction was renewed this morning, so as to bring it subsequent to the Elkins act, on which motions, the first as well as the latter, a preliminary injunction commensurate with the needs of the case is granted. When the decree is prepared, it may be brought to me for approval.