## MACON GROCERY CO. et al. v. ATLANTIC C. L. R. CO. et al.

(Circuit Court, S. D. Georgia, W. D.   July 29, 1908.)

**COURTS — JURISDICTION OF FEDERAL COURTS — INTERSTATE COMMERCE—SUIT TO ENJOIN RATE BY CARRIER.**

    A federal court of a district of which the complainants are inhabitants has jurisdiction of a suit to enjoin several railroad companies, who are members of an association, from putting into effect an alleged unlawful rate on all food commodities shipped in interstate commerce within the territory in which such district is situated, although none of the defendants are citizens of the state, where they operate roads in the state and district, and are found and served therein.

In Equity. Suit for injunction. On pleas to the jurisdiction and demurrers thereto.

W. A. Wimbish, Edgar S. Watkins, and Alexander Akerman, for complainants. Henry L. Stone and Ed. Baxter, for respondent Louisville & N. R. Co. Claudian B. Northrop and Sanders McDaniel, for respondent Southern Ry. Co. and Cincinnati, N. O. & T. P. R. Co. George B. Elliott and Robert C. Alston, for respondent Atlantic C. L. R. Co. Claude Waller, J. D. B. De Bow, and John L. Tye, for respondent Nashville, C. & St. L. Ry. Co. Ed. Baxter and Sidney F. Andrews, special counsel for all respondents.

SPEER, District Judge (orally). This is an exceedingly interesting question, and, upon its proper and final determination, a great deal looking toward the settlement of controversies between the shipping public, and the great lines of transportation, must depend. The averments of the bill are of the most significant character. It is charged that through a great freight association, called the Southeastern Freight Association, the respondent corporations have entered into an unlawful combination in restraint of the business of transportation, by means of which the staple commodities, upon which the very life of the people must depend, are necessarily and largely enhanced in price. It is alleged that this is done in an unlawful manner; that the increase is to go into effect immediately; that the damage to innumerable purchasers of goods throughout the territory affected will be irreparable; that the complainants and all in like case standing have no recourse save by application to the court of equity having jurisdiction.

It is true that in this case the illegality of the alleged increase in rates must necessarily in large measure be determined by the federal law. The legality or illegality of the alleged combination in restraint of trade must be determined by the same law, and it seems to be conceded that, generally speaking, this court would not have jurisdiction of these questions finally, except under conditions which do not exist here; that is to say, the court can only for final determination entertain the federal question in the district of which the defendants are inhabitants. But to my mind this case presents this aspect, if the averments of the bill are taken as true. Here is a threatened and imminent violation of the federal law, of the gravest character to a large number of people, not to the public, but to many. The injuries, the consequences of which are described, will take effect on the 1st of August. There is no time, this being the 29th of July, for these people to have protection, or seek recourse elsewhere. They are entitled to

relief, if the averments are true. "Ubi jus ibi remedium." Wherever there is a wrong, there is a remedy. Now, if this increase of rates is unlawful, as it is alleged to be, if in point of fact these people who bring this complaint are to be made to suffer irreparable injury by the action of the respondents, they ought to have the right somewhere, before some tribunal under our system, to protect themselves from the wrong and the injury. That it is irreparable, if the charges of the bill are true, there can be no doubt. An illustration in point is the Tift Lumber Rate Case, 206 U. S. 428, 27 Sup. Ct. 709, 51 L. Ed. 1124. There was a case where similar charges—arbitrary and unreasonable, it was alleged—were imposed upon the shippers. The decree was granted upon the fullest consideration. It was determined by all the courts having jurisdiction, and by the Interstate Commerce Commission, that those rates were arbitrary and illegal. It was affirmed by the Supreme Court of the United States. The railroads, through their distinguished representatives, had in open court promised to pay back to the shippers the amounts thus exacted, in case this court would withhold the injunction, and the case should finally be determined against them. And yet now we see the shippers are driven to multitudinous proceedings in other cases, and delayed year after year, until their substantial rights will apparently be frittered away by the costs of litigation. This is a grave wrong to the shippers. It is a wrong defined explicitly by federal law, but also denounced by the common law, but the only adequate remedy is in equity. What would be the condition of these shippers before the court, if their charges are true here, if these increased rates should be imposed by the railroad companies? They must pay the exactions, however unlawful. They may then go to the Interstate Commerce Commission, perhaps thence to the Circuit Court of Appeals, and thence to the Supreme Court of the United States, with all that law's delay, which is classed by Shakespeare with "the proud man's contumely, the insolence of office, the pangs of despised love, and all the spurns which patient merit of the unworthy takes." In the meantime the combination of railroads would have the use of money thus unlawfully exacted from the people. All of this these merchants would endure, and in this southern country, which is little able to bear it. Why? Because no court has been found which can stay the wrong and prevent these calamities to the people, because there is no jurisdiction in any court created by the people which can avoid these calamitous results? I do not believe that such is the condition of our law. I think that in view of the general policy of the laws of the United States on this great subject with which our people are grappling, and the wrongs which they are attempting to redress—all I think in a spirit of fairness and justice to the great lines of railway transportation, a spirit which I am sure inspires the breast of this court—there is such a tribunal and such a remedy. I think that we have jurisdiction over these railroads, which come into the Southern district of Georgia, and carry on their business here. They are found here. They remove their cases to these courts on account of their nonresidence when parties sue them. They here bring writs and actions against resident citizens of the state. They here

sue out injunctions against state action taken to decrease their rates. But they deny the jurisdiction when its efficacious remedies are sought in behalf of the same classes against whom they often invoke the power of these courts. This is the district of the complainants' residence, and the defendants, having been found in that district, may be there sued. They cannot plead that they are nonresidents for the purposes of the litigation here, and yet come into this territory, and control the price of everything upon which the comfort and the very life of the people depend, so far as transportation is concerned, and then deny the right of those wronged to be heard. I think that the averments of the bill demand additional inquiry.

I will say now to counsel that if the facts of the case are proved, as they insist they will be, so far as the court is at present advised, it will proceed to retain this bill for injunction until they can make proper application to the Interstate Commerce Commission, and there have the question determined as to whether or not this increase is reasonable. The railroads then will have no reason for delay. They will "post with quick dexterity" for final judgment. The court will not, as at present advised, proceed to final decree in this case, at least until that trained, expert, and responsible body, charged with the special duty, shall pass upon the issue here. I will sustain the demurrer to the plea, and thus intimate that, if complainants do not in a reasonable time go to that department of the government specially charged, the court will dispose of the case. I sustain the demurrers, and overrule the pleas to the jurisdiction, construing the pleas and the averments of the demurrers and the bill together.