GREAT NORTHERN RY. CO. v. KALISPELL LUMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,552.

COMMERCE (§ 85*) — JURISDICTION OF FEDERAL COURTS — RAILROAD RATES — POWER TO DETERMINE REASONABLENESS.

Under Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154] as amended, including the amendatory act of June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1907, p. 892], the Interstate Commerce Commission has original and exclusive jurisdiction to determine the question of the reasonableness of an established rate for the interstate transportation of freight, and when a schedule of rates has been duly filed and has gone into effect the rates thereby prescribed are the only lawful rates until changed by the commission, and a court has no power to enjoin their enforcement.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 85.*

Jurisdiction of federal courts of suits under interstate commerce act, see note to Bailey v. Mosher, 11 C. C. A. 318.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the District of Montana.

I. Parker Veazey, for appellant.

H. D. Folsom, Jr. (John Lind and A. Ueland, of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. This case differs from that of Northern Pacific Railway Company et al. v. Pacific Coast Lumber Manufacturers' Association et al. (just decided by this court) 165 Fed. 1, in that the bill was not filed until after the new rates had been established. The new schedule of rates went into operation on November 1, 1907, the bill was filed on November 9th, and the injunction order was made on December 4th. The bill alleges in substance that the appellees are lumber manufacturers in Flathead county, Mont., and have invested large sums of money in that business; that their said investments have been made and their business built up in the reliance on the permanency of reasonable freight rates for the transportation of their products to markets in the state of North Dakota; that the rates in force for many years prior to November 1, 1907, were reasonable and just, but that the appellant on November 1st established, and is now enforcing, a schedule of extortionate rates between points in Flathead county, Mont., and the markets in Dakota; that the said increase in rates is from 20 to 30 per cent., and will seriously injure, if not entirely destroy, the appellees' business; that the appellant owns the capital stock of the John O'Brien Lumber Company, a corporation engaged in the lumber business in Flathead county, on the appellant's railroad line, and possessed of large mills for the manufacture of lumber; that the lumber so manufactured by said corporation is shipped by the appellant and to a large extent is sold in the Dakota markets in competition with the appellees; that by means of the increased rates the appellant has sought to depress the business of the appellees, and to depress and lower the value of timber and stumpage in the Flathead district so as to acquire the same at less cost for its own manufacturing business; that it will be several months before relief can be had from the Interstate Commerce Commission, and that if the appellant is permitted to exact the rates prescribed by its tariff of November 1, 1907, until its reasonableness has been passed upon by the commission, the damage will be such that it cannot be established or recovered under the provisions of the act to regulate commerce.

By the injunction order the appellant was forbidden until the further order of the court to collect from the appellees the tariff of rates made effective on November 1, 1907, or any amount in excess of the rates of the old tariff which had been established for many years and was in force prior to and until November 1st.

The Circuit Court held that its jurisdiction was properly invoked as exclusive, for the reason that the suit was brought to enforce compliance with the terms of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), and grant-

ed injunctive relief upon the clear showing that a great injustice would be done by requiring the appellees to submit to the newly adopted rates until the Interstate Commerce Commission could act, since the enforcement of that schedule of rates would be followed by the practically immediate destruction of the business of a large number of persons, and that said rates were extortionate and unreasonable.

The question which was before the Circuit Court was a new one, not directly affected by prior adjudications, unless it is to be held that its decision was indicated in a general way by the principles announced in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553. Upon the case made in the bill, and the sustaining affidavits, it appears that the appellant is engaged in the commission of acts which, before the Interstate Commerce Commission shall have determined their legality, will have caused irreparable injury to the appellees, and for which there is no remedy unless it is to be found in a court of equity.

We are not insensible of the force of the argument that the existence of the power of the Circuit Court to afford such relief is not inconsistent with the decision in the Abilene Cotton Oil Case, and that it is not the necessary inference to be drawn from that decision that no court may enjoin the enforcement of a newly established unlawful schedule of rates until after the Interstate Commerce Commission shall have exercised its jurisdiction to pass upon the question of its lawfulness. In that case the court said:

"For if it be that the standard of rates fixed in the mode provided by the statute could be treated on the complaint of a shipper by a court and jury as unreasonable, without reference to prior action by the commission, finding the established rate to be unreasonable and ordering the carrier to desist in the future from violating the act, it would come to pass that a shipper might obtain relief upon the basis that the established rate was unreasonable, in the opinion of a court and jury, and thus such shipper would receive a preference or discrimination not enjoyed by those against whom the schedule of rates was continued to be enforced."

And the court, after adverting to the absolute destruction of the act and of the remedial provisions which it created, which would arise from the recognition of such a right, proceeded to say:

"For if, without previous action by the commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that, unless all courts reached an identical conclusion, a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question. Indeed, the recognition of such a right is wholly inconsistent with the administrative power conferred upon the commission, and with the duty, which the statute casts upon that body, seeing to it that the statutory requirement as to uniformity and equality of rates is observed."

It is true that the question actually litigated and decided in that case concerned only the right of an individual shipper to recover excessive and unjust freight charges paid under protest on car loads of freight carried over the defendant's road, that it was to the inquiry whether such right of recovery existed prior to the action of the commission that the language of the opinion was addressed, and that

there was involved no question of the right of concerted action on the part of, or in behalf of, all shippers to restrain temporarily the enforcement of a schedule of rates affecting all persons similarly situated. And it may be conceded that while it is obvious, and it is clearly pointed out in the opinion, that if individual shippers may institute in divers courts each his own action at law to recover damages for alleged violation of the interstate commerce law in the making and collecting of excessive and extortionate freight charges, prior to judgment thereon by the commission, the actions will necessarily result in divergent conclusions, or, in other words, that a multitude of independent restraints would destroy all uniformity of rates, such result might not necessarily attend the exercise of jurisdiction as it was invoked in the present case.

But when we consider the scope and purpose of the act, enlightened by the observations of the court in the decision just referred to, and take into account all the provisions of the act, we are led to the conclusion that it was the intention of Congress that the jurisdiction of the Interstate Commerce Commission to decide the question of the reasonableness of an established rate for the interstate transportation of freight should be original and exclusive. Prior to the interstate commerce act, there was no regulation of the interstate carriage of freight. Under its power to regulate commerce, Congress has the exclusive power to establish the rates of such transportation of freight. By the interstate commerce act it has delegated that power in the first instance to the interstate carriers, but has imposed upon them the obligation to establish reasonable rates. The carriers may not only establish rates, but they may change established rates. They may increase them or lower them, provided that at all times the rates are reasonable, and there can be no presumption that an increase in rates is unreasonable. It is given to the Interstate Commerce Commission to decide whether the rates so established by the carriers are reasonable. Thus the whole power to establish rates begins with the carrier and ends with the commission. Prior to the act, there was no power in any court to establish interstate rates, and it is certain that the act itself vests no such power in any court.

When a schedule of rates is once established in the mode prescribed by the statute, a former rate is superseded and is no longer in existence. There can be no question that to enjoin a rate already established and in operation and to require the carrier to observe a previously established rate no longer in effect is to make a rate. A court can have no more power to say that the carrier shall go back to a superseded rate than it has to fix a wholly new rate. In either case the court establishes a rate. It can make no difference that the newly established rate has been in existence but a short time before the application to a court for injunctive relief. If a court may enjoin the enforcement of a rate newly established, as in this case, it may on the same grounds enjoin any established rate, no matter how long it may have been in force, and may compel the carrier to observe either the former rate or a new rate. The result is to divest the Interstate Commerce Commission of its power, "which body alone," said the court in the Abilene Cotton Oil Case, "is vested with power originally to enter-

tain proceedings for the alteration of an established schedule because the rates fixed therein are unreasonable."

The argument that the enforcement of the newly established rates will work irreparable injury, for which there is no remedy if injunctive relief is denied, loses its cogency when we take into view the fact that the Interstate Commerce Act requires all interstate commerce carriers to give 30 days' notice of a proposed change in the schedule, and thereby affords shippers ample opportunity to resort to equity to prevent the establishment of a proposed rate which may be so unreasonable as to work irreparable injury. Section 6 requires the carrier to keep open to the public inspection at all its stations and to file with the commission schedules of its established rates, and prohibits alike an advance or a reduction in such rates without prior public notice, and declares that it shall be unlawful for any carrier of interstate commerce to charge or receive from any shipper a greater or less compensation than that specified in such schedules. In brief, a carrier cannot lawfully charge or receive any rate other than that so established, and any departure therefrom will subject it to the penalty denounced by the act. We see no escape from the conclusion that the rate so established must be considered binding upon the carrier until corrected in the only manner pointed out by the act, and that any rate promulgated and adopted in practice in the manner required by law is a lawfully established rate, however exorbitant and unreasonable it may be, and that there is no power vested in any court to declare it unreasonable prior to the decision of the commission. Potlatch Lumber Co. v. Spokane Falls & N. Ry. Co. (C. C.) 157 Fed. 588.

The injunction order is reversed.

ROSS, Circuit Judge (concurring). I agree to the order of reversal—my views upon the subject being expressed in my dissenting opinion this day filed in the case entitled Union Pacific Railroad Company et el. v. Oregon & Washington Lumber Manufacturers' Association et al. (No. 1,525) 165 Fed. 13.