HOUSTON COAL & COKE CO. v. NORFOLK & W. RY. CO.

POWHATAN COAL & COKE CO. v. SAME.

(Circuit Court, W. D. Virginia. July 8, 1909.)

COMMERCE (§ 89*)—INTERSTATE COMMERCE ACT—JURISDICTION TO ENJOIN ESTABLISHMENT OR ENFORCEMENT OF RATES.

A Circuit Court of the United States is without jurisdiction to enjoin the establishment of an interstate freight rate by a carrier, or to enjoin the enforcement of a new rate which has been published and filed, before its reasonableness and validity have been passed on by the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*

Jurisdiction of federal courts of suits under interstate commerce act, see note to Bailey v. Mosher, 11 C. C. A. 318.]

In Equity. On demurrers to bills.

Vinson & Thompson, Chapman & Gillespie, Arthur B. Hayes, and Wm. A. Glasgow, Jr., for complainants.

Theodore W. Reath, Lucien H. Cocke, and John H. Holt (Joseph I. Doran, on the brief), for defendant.

McDOWELL, District Judge. In the first of these cases the bill prays that the defendant be enjoined from filing, posting, or enforcing a proposed increased freight rate on coal from West Virginia to the "lake ports" in Ohio, alleged to be unreasonable, and for general relief. In the second case the bill prays that defendant be enjoined from establishing such increased rate, and, in the alternative, that, if not enjoined from establishing the increased rate, the defendant be enjoined from enforcing such rate until the Interstate Commerce Commission can act on the question of the reasonableness of the proposed rate. In both cases restraining orders were granted. In the Houston Case the defendant moves for the vacation of the restraining order, and in the Powhatan Case the complainant moves for a temporary injunction. Both bills have been demurred to.

It seems to me unnecessary to consider any other question than that of the jurisdiction of this court to grant the relief prayed for. The opinions of the Supreme Court in Texas & Pac. R. Co. v. Abilene Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, and in Southern Ry. Co. v. Tift, 206 U. S. 428, 27 Sup. Ct. 709, 51 L. Ed. 1124, do not seem conclusive of the questions here presented. In the former case the court had before it only the question as to the right of a shipper to recover at law for unreasonable freight charges, prior to action by the Interstate Commerce Commission. In the latter case the trial court had unquestionable jurisdiction (the Commission having acted and a petition under section 16 of the interstate commerce act [Act Feb. 4, 1887, c. 104, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165)] having been filed) before any decree prejudicial to the appellant was made, and the Supreme Court in effect merely announced that it was not in that case called upon to decide the question we are now considering. The first paragraph of the syllabus of the case is not justified by the opinion. Of the decisions of the subordinate federal courts it must be said that the current of opinion seems to have set in the direction of a denial of the jurisdiction. See Jewett v. Railroad Co. (C. C.) 156 Fed. 165; Kalispell Lumber Co. v. Railroad Co. (C. C.) 157 Fed. 845; Kiser Co. v. Railroad Co. (C. C.) 158 Fed. 193; Macon Grocery Co. v. Railroad Co. (C. C.) 163 Fed. 736; Northern Pac. R. Co. v. Pac. Lumber Co. (C. C. A.) 165 Fed. 1; Union Pac. R. Co. v. Oregon Lumber Co. (C. C. A.) 165 Fed. 13; U. S. v. Railroad Co. (C. C.) 122 Fed. 544; U. S. v. Railroad Co. (C. C.) 142 Fed. 176, 187; Potlatch Lumber Co. v. Railroad Co. (C. C.) 157 Fed. 588; Railroad Co. v. Kalispell Lumber Co. (C. C. A.) 165 Fed. 25; Railroad Co. v. Macon Grocery Co. (C. C. A.) 166 Fed. 206; Columbus Co. v. K. & M. Ry. Co. (C. C.) 171 Fed. 713.

The first question is as to the power of this court to enjoin the establishment of the proposed rate. It seems to me that the interstate commerce act shows that Congress intended to give to the Commission the sole jurisdiction to pass upon the reasonableness of a rate in the first instance. If this court assumes jurisdiction to enjoin the filing and posting of a rate, it is clear that no case for the action of the Commission could arise. A bill which prayed solely for a temporary, and finally a permanent, injunction forbidding a carrier to file and post an interstate rate, would be a pure injunction bill, in no sense ancillary; and before the permanent injunction could issue, at least, the court must investigate and determine the unreasonableness of the proposed rate. By necessary implication as it seems to me the language used in the act forbids that the court can have such power. Its exercise effectually and finally dispenses with action by the Commission. In U. S. v. Railroad Co. (C. C.) 122 Fed. 545, 546, it is said:

"In a recent case coming up from Kansas, the Supreme Court denied the right of the government to maintain a suit somewhat similar to this. But in that case the Interstate Commerce Commission had never granted a hearing, or made an order, in the matters involved. The Commission is the tribunal instituted by the government to inquire primarily into the fact as to whether discrimination exists. To it the shipper can bring his grievance.

Before it the railroads have a right to be heard. Until an inquiry is there made, and a finding and order had, the jurisdiction of a court of equity may not be invoked, because for the court to take hold at that primary point in the case would be to transfer the jurisdiction of the Interstate Commerce Commission—the jurisdiction to first inquire into the facts—to a court of equity. In practical application, it would abolish the Interstate Commerce Commission and devolve upon a master in chancery the preliminary inquiry into the facts. Because of this—though the reason is not stated by the court as I have stated it—the Supreme Court held that the suit thus before it could not proceed, except under the Elkins act subsequently enacted; but no opinion was expressed upon the right of the government to bring suit in cases where there had been a preliminary inquiry and finding by the Interstate Commerce Commission."

The case therein referred to is supposed to be Missouri Pacific Ry. v. U. S., 189 U. S. 274, 282, 23 Sup. Ct. 507, 47 L. Ed. 811.

Let us now consider the power of the court to enjoin a carrier from enforcing a rate that has been filed and posted, but which has never been enforced. The theory on which such relief is asked is that the carrier will proceed to file and post the new rate, and that the court will merely enjoin the enforcement of the new rate until the Commission can act on the question of the reasonableness of the rate.

For argument's sake, and without considering the question, it is assumed that the federal Circuit Courts had equity jurisdiction, prior to the enactment of the interstate commerce act, to enjoin a carrier from enforcing an unreasonable interstate rate. Does not 'the act by necessary implication repeal the power? It seems to me that it does. If the new rate is filed and posted for the requisite period, such rate is "established." If enforcement of such rate is enjoined, what rate can the carrier enforce during the period of injunction? It is argued that the former rate can be used. But the filing and posting of the new rate establishes it, and a charge of a less rate is forbidden by the act, both as originally expressed and as amended. "When a schedule of rates is once established in the mode prescribed by the statute, a former rate is superseded and is no longer in existence." Railroad Co. v. Kalispell Co. (C. C. A.) 165 Fed. 25, 28. Obviously a power in the courts to enjoin the enforcement of a rate which has been duly established, prior to action by the Commission, is totally at variance with the expressed intent of the law.

Again, by Act Feb. 4, 1887, c. 104, § 15, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 (U. S. Comp. St. Supp. 1907, p. 900), the Interstate Commerce Commission is only given jurisdiction to pass upon the reasonableness of a rate after such rate has been "demanded, charged or collected." This language does not comport with an intent to leave in or give to the courts a jurisdiction to enjoin the enforcement of a rate which has been filed and posted; for, if such injunction be granted and obeyed, the new rate can never be demanded, charged, or collected. It was said in argument that the Commission had in an unreported ruling held that it had jurisdiction to inquire into the reasonableness of a rate prior to its enforcement ; but on a careful reading of the statute I am unable to agree to the soundness of such a conclusion. I do not find in the act

that a carrier violates the law by merely filing and posting an unreasonable rate. The carrier may, by so doing, put itself in a position where it can do no business without violating the law; but until the carrier has not only established an unreasonable rate, but has demanded, charged, or collected such rate, it has not violated the act, and has not done such an act as gives the Commission jurisdiction to pass on the rate. Here, again, the expressed intent of the act is obviously at variance with an intent that the court shall have (or retain) a power to enjoin the enforcement of an established rate prior to action by the Commission, as the exercise of such power would dispense with and prevent action by the Commission.

Perhaps a word or so should be devoted to the clause in section 22 of the act preserving existing remedies at common law. Assuming, without so holding, that there was jurisdiction to enjoin the enforcement of an unreasonable rate, and that this clause refers to equitable remedies, still the decision in the Abilene Case, supra, makes it impossible to construe this clause according to the contention of complainants. If section 22 does not preserve an admittedly existing common-law right of recovering damages for excessive charges previous to action by the Commission, a fortiori this section does not preserve a disputable equitable right which nullifies the chief conception and intent of the act as a whole.

In the argument that the proposed action of the carrier is the result of a conspiracy to violate the interstate commerce act I can find no addition to the strength of the case of the complainants. As there is no jurisdiction to enjoin the enforcement of an unreasonable rate, the mere fact that the intent to enforce the unreasonable rate was born of a conspiracy does not alter the essential nature of the case. We still have a request that the court enjoin the enforcement of a rate said to be unreasonable prior to action by the Commission.

The argument based on Anti-Trust Act July 1, 1890, c. 646, 26 Stat. 209, 7 Fed. St. Ann. 336 (U. S. Comp. St. 1901, p. 3253), assumes the existence of a right in private individuals to invoke the power given the courts by section 4 of the act. The language used by the Supreme Court in Minnesota v. Northern Securities Co., 194 U. S. 48, 71, 24 Sup. Ct. 598, 48 L. Ed. 870, seems to destroy the basis for this argument. Again, it is a seemingly unanswerable argument against such assumption that if the power exists in individuals to enjoin the enforcement of a freight rate, previous to action by the Interstate Commerce Commission, the anti-trust act largely destroys the fundamental scheme of the interstate commerce act. It seems to me most improbable that Congress had any such intent; and the language used in Elkins Act Feb. 3, 1903, c. 708, 32 Stat. 847, 10 Fed. St. Ann. 170 (U. S. Comp. St. Supp. 1907, p. 880), and in the amended Interstate Commerce Act June 29, 1906, c. 3591, 34 Stat. 584, Supp. Fed. St. Ann. 168 (U. S. Comp. St. Supp. 1907, p. 892), seems to clearly show that such intent either never existed or has been abandoned.

The objections to the two bills at bar based on the failure to allege facts showing irreparable injury or the necessity of a multiplicity

of actions are undoubtedly of much strength. However, I have not thought it necessary to enter upon a discussion of these questions.

It follows, from what has been previously said, that this court is without jurisdiction to grant any relief whatever under either of the bills here.