NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>TERESA A. BRYANT,<br><br>          Debtor.<br>_____<br><br>TERESA A. BRYANT,<br><br>          Appellant,<br><br>v.<br><br><br>THE BANK OF NEW YORK MELLON;<br>SELECT PORTFOLIO SERVICING,<br>INC.,<br><br>          Appellees.<br>_____ | BAP No. CC-16-1009-DKuF<br><br>Bk. No. 8:10-bk-25064-CB<br><br><br><br><br>**M E M O R A N D U M**[1] |

Argued and Submitted on July 28, 2016
at Pasadena, California

Filed - August 3, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:    Fritz J. Firman argued for appellant; Shiva D. Beck of Locke Lord LLP argued for appellees.

Before: DUNN, KURTZ, and FARIS, Bankruptcy Judges.

---

    [1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

This appeal revolves around real property in Hawaii (the "Hawaii Property"). Teresa A. Bryant (the "Debtor"), who owns but does not reside at the Hawaii Property, filed a chapter 13[2] petition in 2010. The Debtor successfully stripped the lien of the second position mortgage holder on the Hawaii Property via an order entered by the bankruptcy court valuing the Hawaii Property at $375,000. In 2013, the Bank of New York Mellon ("BNY Mellon"), the current holder of the first-position mortgage, obtained relief from the automatic stay to foreclose on the Hawaii Property.

While contesting BNY Mellon's judicial foreclosure in Hawaii, the Debtor simultaneously proceeded to deal with the Hawaii Property and BNY Mellon in the bankruptcy case. The Debtor modified her chapter 13 plan to "cram down" the previously determined value of the Hawaii Property to reduce the secured portion of BNY Mellon's claim. She then moved the court to direct the chapter 13 trustee (the "Trustee") to pay $375,000 to BNY Mellon. After the court orally granted the motion at a hearing, BNY Mellon reappeared in the bankruptcy case, represented by new counsel, to file an opposition to the Trustee's notice of intent to file a final report and account to close the case. Sixty-eight days after the first hearing, a second hearing was held, at which BNY Mellon complained that its

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

state court counsel in Hawaii had not been apprised of the Debtor's continued actions in the bankruptcy court. The bankruptcy court concluded for various reasons that the Debtor's conduct necessitated reversal of the previous decision and entered an order denying the debtor's motion.

The Debtor appeals. We VACATE the bankruptcy court's order and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed her chapter 13 petition on October 22, 2010. Her schedule of real property included one entry, the Hawaii Property, which she valued at $558,000. She listed three secured debts in her schedules, each secured by the Hawaii Property: a first mortgage held by Bank of America in the amount of $800,000; a second mortgage, also held by Bank of America, in the amount of $198,771; and a precautionary entry for the City and County of Honolulu for property taxes, with a debt amount of $0. The Debtor's chapter 13 plan, which was confirmed on February 7, 2011, required the Debtor to make monthly payments of $2,380 directly to Bank of America for the first mortgage.[3] The plan also provided that the Debtor would file a motion to avoid

---

[3] Though the excerpts of record provided by the Debtor on appeal are extensive, the procedural complexity of the underlying case makes it necessary for us to consider other documents, including the chapter 13 plan, which were filed with the bankruptcy court but not included in the appellate record. Hence, we exercise our discretion to take judicial notice of such documents. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

the second mortgage. The mandatory form of the plan further provided that property of the bankruptcy estate would not revest in the Debtor until discharge was entered, or until the case was closed without discharge.

As provided in the plan, in August 2012, the Debtor filed a motion to determine the value of the Hawaii Property and to avoid the second-position lien of Bank of America (the "Valuation Motion"). The Valuation Motion was served by certified mail on the CEO of Bank of America, as both first and second mortgage holder, and on BAC Home Loans Servicing, LP, its servicer. In the body of the Valuation Motion, the Debtor explained that "[t]he only issue is whether there is sufficient value in the [Hawaii] Property to secure the BAC Home Loans Servicing, LP lien." To answer this question, the Debtor attached the declaration of a real estate appraiser estimating that the fair market value of the Hawaii Property was $375,000, significantly less than the value the Debtor had stated on her schedules, and far less than the amount owed on the first mortgage. No opposition was filed. After a hearing, the bankruptcy court entered an order on October 1, 2012, captioned "Order on Debtor's Motion to Value Real Property for the Purposes of Plan Treatment and to Extinguish Lien of BAC Home Loans Servicing, LP Not on Debtor's Residence" (the "Valuation Order").[4] The Valuation

[4] Before the Valuation Motion, the Debtor filed a substantially similar motion which referred to the Hawaii Property as her "principal residence." That motion was withdrawn after a hearing, and the Valuation Motion was filed in its place. According to the Debtor, the bankruptcy court insisted that the
(continued...)

4

Order was served by certified mail on Bank of America and BAC Home Loans Servicing, LP. In addition to avoiding the second-position lien, the Valuation Order provided: "As of October 22, 2010 [i.e., the petition date] and at all times since October 22, 2010, the [Hawaii Property] is valued at no more than $375,000 based on adequate evidence."

In August 2013, BNY Mellon appeared in the case for the first time to move for relief from the automatic stay. BNY Mellon indicated that it was the assignee of the holder of the first-position mortgage[5] on the Hawaii Property and that the Debtor had failed to make postpetition mortgage payments as required by the confirmed plan. Over the Debtor's various evidentiary and other objections, relief from the automatic stay was granted by court order ("Relief from Stay Order") on September 19, 2013, permitting BNY Mellon to pursue its foreclosure remedies in state court. In January 2014, BNY Mellon commenced judicial foreclosure proceedings in Hawaii.

While the foreclosure proceedings were ongoing, the Debtor filed a motion to modify her chapter 13 plan ("Modification

[4](...continued)
Valuation Motion be re-filed to reflect that the Hawaii Property was not the Debtor's residence. Unfortunately, there is no transcript of that hearing, so we have no way of confirming what was discussed. The record is consistent with the Debtor's explanation.

This is one of many points at which the record leaves us uncertain as to why things were done in the way they were done.

[5] An exhibit attached to the relief from stay motion shows that BNY Mellon received an assignment of the mortgage on December 21, 2012, approximately twelve weeks after the Valuation Order had been entered.

5

Motion"). The Modification Motion stated as follows: "Debtor will cram down the first trust deed [sic] on [the Hawaii Property] to the secured value of the subject property, to wit $375,000. Said secured sum will be paid through the Chapter 13 Plan in a lump sum to the first trust deed holder which shall be paid to the Chapter 13 trustee or directly to the lender with the Chapter 13 trustee's fee thereon paid to the Chapter 13 trustee by March 1, 2014 dividend will be reduced to 1%." (Errors in original.) In an attached declaration, the Debtor's attorney expressed his view that the Valuation Order, which was not appealed, was now "the law of this case." He further declared that the Debtor had "a lender in place" that would pay BNY Mellon the full value of the Hawaii Property as determined in the Valuation Order. The Modification Motion was served by certified mail on officers of Bank of America and BNY Mellon. In addition, it was served on the attorney who had filed the relief from stay motion for BNY Mellon and on another attorney who had filed a proof of claim supplement for BNY Mellon.

The only response to the Modification Motion came from the Trustee, who opposed it on the following grounds:

1. The Modification Motion was a duplicate of a second, identical document filed on the same day. The Trustee requested that one of those documents be withdrawn.

2. The proof of service did not indicate that the current Modification Motion had been served properly. The Trustee noted that the Debtor had filed a substantially identical modification motion months earlier and that certain documents bore dates that appeared to correspond to that previous motion.

6

3.    Portions of the Modification Motion were illegible.

4.    The Modification Motion appeared to propose payment of the $375,000 on March 1, 2014, a date which had already passed by the time the Modification Motion was filed.  Also, the Debtor inappropriately proposed to reduce the Trustee's compensation to 1%.

5.    The Modification Motion could be granted only if the court also granted the Debtor's concurrently filed request for approval of refinancing.

Alternatively, the Trustee indicated he would recommend granting the Modification Motion if the noted problems were corrected.  Though none of the defects the Trustee noted appear to have been addressed in any way, the court granted the Modification Motion after a hearing in an order ("Modification Order") that read: "Based on Debtor's motion filed on (date) [sic] August 1, 2014 as docket entry number 87 **and the recommendation of the chapter 13 trustee**, it is ordered that the Debtor's motion is: Granted."  (Emphasis added.)  The Modification Order was entered on November 26, 2014 and was not appealed.

On September 17, 2015, with the chapter 13 case nearing completion and the foreclosure apparently still ongoing in Hawaii, the Debtor filed a proof of claim on behalf of "Bank of America, N.A.: Servicer for [BNY Mellon]."[5]  The proof of claim

---

[5] In March 2013, Bank of America had filed its own proof of claim as a "reference document" with no information included concerning the amount or nature of the claim.  At that date, BNY
(continued...)

indicated that BNY Mellon's claim was fully secured in the amount of $375,000. The Debtor attached the Valuation Order to the proof of claim. The following day, the Debtor filed a motion ("Payment Motion") asking the bankruptcy court to direct the Trustee to pay the secured claim. According to the Payment Motion, "[t]he Debtor was unable to get anyone to open an escrow to pay [BNY] Mellon's secured debt. . . . The Debtor's lender is willing to wire the Chapter 13 Trustee $375,000, plus the Chapter 13 Trustee's fees to pay the secured claim of [BNY] Mellon the $375,000 necessary to pay [BNY] Mellon's claim in full [sic]." The Payment Motion was served on the CEO of BNY Mellon by certified mail, and the attorneys who had appeared on behalf of BNY Mellon in the bankruptcy case received electronic notice.

The Trustee filed comments indicating he approved of the Payment Motion. No other response was filed. The court held a hearing on the Payment Motion on October 8, 2015. The following is the entire colloquy that took place at the October 8 hearing:

> THE COURT: Number 11, Teresa Bryant. Motion for the trustee to pay the secured claim of Mellon

---

[5](...continued)
Mellon already had become the assignee for the first mortgage, so it is unclear why Bank of America filed the proof of claim. Apparently, Bank of America is or was BNY Mellon's servicer for the mortgage.

It is conceivable that the "reference document" claim was intended to apply to the second, stripped mortgage. But this seems unlikely, since BNY Mellon in 2014 filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges linked to the claim filed by Bank of America. See Main Case Claims Register, claim no. 7. Perhaps most significantly for purposes of this appeal, this filing shows that BNY Mellon was actively participating in the bankruptcy case as early as February 2014.

8

Bank.

[DEBTOR'S ATTORNEY]: Good afternoon, your Honor. Fritz Firman appearing on behalf of the Debtor.

THE COURT: Good afternoon. How does the trustee feel about this?

[TRUSTEE'S ATTORNEY]: You know, if the Court orders us to pay funds to a party, we will do that. But, there's no escrow in this case. We can't vouch for anything, other than that we'll send funds.

THE COURT: Well, I mean, as long as it works, I guess. I'll go ahead and grant.

[DEBTOR'S ATTORNEY]: Thank you, your Honor.

A docket entry concerning the hearing likewise indicates that the Payment Motion was granted.

A few days after the October 8 hearing, the Trustee filed a notice of intent to submit a final report and account in anticipation of closure of the chapter 13 case. The attached proposed final report and account indicated payment of $0 to BAC Home Loans Servicing, LP, evidently as BNY Mellon's servicer, on its claim of $375,000. Approximately one month later, BNY Mellon filed, through new counsel, an opposition to the proposed final account and report. BNY Mellon explained that it had no objection to the filing of a final account and report, but that it opposed the proposed payment to it (or its servicer) of $0. BNY Mellon expressed its displeasure with the Debtor's activities in the foreclosure action and the bankruptcy case, particularly the fact that the Debtor had proceeded in these two forums independently and without keeping each court apprised of events occurring elsewhere. Similarly, BNY Mellon complained that the Debtor had not informed the attorneys representing it in the foreclosure action of the pendency of the Debtor's various

9

motions in the bankruptcy court. Concurrently, BNY Mellon also filed declarations and requested judicial notice of a document filed in the foreclosure proceeding stating that the value of the Hawaii Property was $502,000.

The Trustee filed a response indicating that he took no position on BNY Mellon's response to the proposed final report and account. He acknowledged that the notice of intent to file the final report was premature and should not have been filed before entry of an order granting the Payment Motion. The Trustee also noted that BNY Mellon's opposition to the proposed final report and account "cannot on its face procedurally or materially challenge" any of the Debtor's motions, whether pending or previously granted.

The court held an additional hearing on the Payment Motion on December 15, 2015 ("December 15 hearing"), at which the Debtor and BNY Mellon appeared through counsel. The bankruptcy court suggested that the Debtor ought to have served her bankruptcy court motions on BNY Mellon's foreclosure counsel in Hawaii, rather than proceeding without such service in the hope that "they may not catch it," an approach the court characterized as an "underhanded" attempt to "get around the fact that relief from stay had been granted . . . ." In response to the Debtor's counsel's protestations that he had complied with the service requirements imposed by the Rules and that BNY Mellon's Hawaii counsel was well aware of the bankruptcy,[6] the court elaborated:

---

[6] The Debtor's counsel told the court that the Debtor's bankruptcy motions relating to the Hawaii Property had been

(continued...)

10

I granted relief from stay. To most creditors, once they're granted relief from stay by the bankruptcy court, it's not property of the estate, they go forward and they do what they need to do, they're not paying attention to the bankruptcy anymore. They're done. They got relief from stay. Yet all these things that are going on that aren't served on counsel in Hawaii, but they're served to other places because that's all you have to serve them to. It's okay. I'm not buying it. I'm having trouble here.

The court further commented that the Payment Motion was "basically . . . a collateral attack on the relief from stay proceeding." The Debtor's counsel vigorously disputed that characterization, arguing that the Relief from Stay Order did not amount to an order granting the Hawaii Property to BNY Mellon and that the Debtor was entitled to oppose the foreclosure. The court agreed that the Debtor was permitted to oppose foreclosure, but disagreed that the bankruptcy court could continue to "affect" the foreclosure after the Relief from Stay Order had been entered.

The Debtor's counsel further argued that the Payment Motion had been granted already and that BNY Mellon had not moved to vacate the court's oral ruling. In response, the bankruptcy

---

[6](...continued) attached to documents filed in the state court. BNY Mellon's counsel denied that his client's state court counsel was aware of "everything that was going on," but he apparently conceded that state court counsel had become aware of at least some of the Debtor's recent bankruptcy activities in November 2014.

A declaration submitted by BNY Mellon's state court counsel stated that her office had learned of the Modification Order in connection with a document filed in state court in May 2015. It appears that BNY Mellon's state court counsel was aware of the Debtor's continuing bankruptcy activities for at least four months before the October 8 hearing on the Payment Motion.

11

court announced its intention to vacate not only the oral ruling on the Payment Motion, but also the 2012 Valuation Motion, based upon "fraud on the court." When the Debtor's counsel argued that it was inappropriate to vacate a three-year-old order sua sponte, the court proposed instead to "clarify" the Valuation Order to provide that it governed only the lien-stripping procedure, not other aspects of plan treatment. The court stated that the Valuation Order was not binding against BNY Mellon, even though BNY Mellon's predecessor in interest Bank of America held both the first and second liens at the time of the Valuation Order, on the ground that "a first[-position lienholder] doesn't necessarily come in and defend a motion like that." Finally, the Debtor's counsel argued that the Modification Motion had been granted by final order, BNY Mellon having made no objection. The court reiterated that the "real issue" was the failure to serve BNY Mellon's counsel in Hawaii.

Before the hearing ended, BNY Mellon's counsel briefly raised an additional argument, namely that the Modification Order, which was entered in November 2014, seemed to require a payment of $375,000 to have been made to BNY Mellon in March 2014. That payment had not been made. The court did not comment on this argument or invite the Debtor's counsel to respond to it. Following the hearing, BNY Mellon's counsel lodged a proposed order vacating both the Modification Order and the oral ruling granting the Payment Motion, as well as denying the Payment Motion. The Debtor objected to the form of order on the grounds that it proposed to grant relief that was neither requested nor granted at the December 15 hearing. Ultimately, the court

12

entered an order that vacated the oral ruling at the October 8 hearing and denied the Payment Motion ("Payment Order"). The Payment Order made no mention of the Modification Order or the Valuation Order. The Debtor appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Whether the bankruptcy court abused its discretion in reconsidering its prior oral ruling.

2. Whether the bankruptcy court abused its discretion in denying the Payment Motion.

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's legal conclusions de novo and its findings of fact for clear error. Bronitsky v. Bea (In re Bea), 533 B.R. 283, 285 (9th Cir. BAP 2015). We review the bankruptcy court's application of procedural rules and whether a procedure comports with due process de novo. Frates v. Wells Fargo Bank, N.A. (In re Frates), 507 B.R. 298, 301 (9th Cir. BAP 2014). A decision to vacate a previous order generally is reviewed for abuse of discretion. Jeff D. v. Otter, 643 F.3d 278, 283 (9th Cir. 2011).

An abuse of discretion occurs if the bankruptcy court fails to apply the correct legal standard or applies it in a way that is illogical, implausible or unsupported by the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc); Greif & Co. v. Shapiro (In re Western Funding Inc.), 550 B.R.

13

841, 849 (9th Cir. BAP 2016).

## V. DISCUSSION

Based on the transcript of the December 15 hearing, it appears that the bankruptcy court reached its ultimate decision to deny the Payment Motion on four bases: (I) the Debtor failed to serve any of her motions on BNY Mellon's state court counsel in Hawaii; (ii) the Debtor acted in bad faith and committed fraud on the court; (iii) the Payment Motion was an improper collateral attack on the Relief from Stay Order; and (iv) neither the Valuation Order nor the Modification Order controlled the outcome. We address each of these bases below, but first we must address the Debtor's argument that it was procedurally improper for the bankruptcy court to enter the Payment Order after previously announcing a contrary oral ruling.

**A.    The bankruptcy court did not err by revisiting the Payment Motion after announcing an oral ruling.**

In the Payment Order, the bankruptcy court purported to "vacate" the oral ruling it had made at the October 8, 2015, hearing. On appeal, both parties frame the issue in terms of "vacating" or "reconsidering" that oral ruling under Rule 9023 or Rule 9024. See Apl't Opening Brief at 12-13; Apl'e Brief at 11-15. The parties are arguing from a false premise. The oral ruling did not constitute an effective order and therefore did not need to be vacated before the bankruptcy court could revisit the matter.

Rules 9023 and 9024 incorporate Civil Rules 59 and 60, which govern amendment of judgments and relief from judgments or orders. Rule 9021 provides that a "judgment or order is

14

effective when entered under Rule 5003." Rule 5003, in turn, provides for the maintenance by the clerk of a docket on which "each judgment, order, and activity" must be entered. Rule 5003(a). Thus, a ruling is only an "order" when it is in written form and entered on the bankruptcy court docket. See, e.g., Neal v. Wells Fargo Bank, N.A. (In re Neal), 508 B.R. 243 (M.D. Ga. 2014) (bankruptcy court's oral ruling was not an order). A written order need not take any particular form to fit within the Rules' definition. "Even a minute entry can be a final, appealable order 'if it fully adjudicates the issues and clearly evidences the court's intent that the order be the court's final act.'" Key Bar Invs., Inc. v. Cahn (In re Cahn), 188 B.R. 627, 630 (9th Cir. BAP 1995) (quoting McDonald v. Sperna (In re Sperna), 173 B.R. 654, 657 (9th Cir. BAP 1994)). This qualification, that a minute entry is a final order only if it is intended to be the court's final act, is crucial. In an unpublished decision that referred to Cahn, the Ninth Circuit refused to regard a minute entry as a final order, in part because "everyone involved anticipated the future lodging of [a] substantive order." Valley Nat'l Bank v. B.C. Enters., Ltd. (In re B.C. Enters., Ltd.), 82 F.3d 422, 1996 WL 169350 at *3-*5 (unpub.) (9th Cir. Apr. 10, 1996). Though these decisions concern the finality of orders for purposes of appeal, they help in clarifying whether a ruling is an "order" for purposes of Rule 9021.

The bankruptcy court here did not make even a minute entry resolving the Payment Motion after its oral ruling. The only written reference to the oral ruling that appears on the

15

bankruptcy court's docket is an unsigned text-only entry, made by a deputy clerk, reading as follows: "Hearing Held (RE: related document(s)109 Generic Motion filed by Debtor Teresa A. Bryant) - GRANTED." We cannot conclude that the bankruptcy court intended this docket text entry as its "final act" in the matter. Nor did the Debtor so conclude, as evidenced by the fact that her counsel lodged a form of order granting the Payment Motion, which the court refused to sign. As noted above, the Trustee apparently had the same expectation.

It is apparent from the record that the court and parties expected a formal, written order to be lodged and entered. Unless and until such an order was entered, the bankruptcy court's "final act" in the matter had yet to take place. In such circumstances, we agree with the district court in Neal that the bankruptcy court was "free to modify its oral [ruling] by entering a separate written order." In re Neal, 508 B.R. at 246.

Needless to say, the bankruptcy court's freedom to revisit its oral ruling before entering a final order does not obviate the need to comport with due process. Here, the bankruptcy court did not simply reverse itself, but instead held an additional hearing in response to arguments BNY Mellon raised in its opposition to the Trustee's proposed final report. The Debtor argues that those arguments were not properly before the court and could not justify reconsideration, but it is clear from the record that Debtor's counsel was aware of BNY Mellon's arguments and arrived at the December 15 hearing prepared to rebut them. We are satisfied that the Debtor received adequate notice and opportunity to address the concerns that prompted the bankruptcy

16

court to deny the Payment Motion.

**B.  The Debtor was not required to serve BNY Mellon's state court counsel.**

Procedures for contested matters in bankruptcy cases are governed by Rule 9014, which requires service of a motion "in the manner provided for service of a summons and complaint by Rule 7004 . . . ." Rule 9014(a). If the recipient of a motion is an insured depository institution, which BNY Mellon was and is, service

> shall be made by certified mail addressed to an officer of the institution unless—
> (1) the institution has appeared by its attorney, in which case the attorney shall be served by first-class mail;
> (2) the court orders otherwise after service upon the institution of notice of an application to permit service on the institution by first-class mail sent to an officer of the institution designated by the institution; or
> (3) the institution has waived in writing its entitlement to service by certified mail by designating an officer to receive service.

Rule 7004(h). We have characterized the requirements of Rule 7004(h) as "more rigorous" than the minimum notice required for constitutional purposes. In re Frates, 507 B.R. at 302. "Plainly, Rule 7004(h) is the standard against which we measure the adequacy of the service" where that Rule applies. Id.

As discussed above, the Debtor complied with Rule 7004(h) in serving the Valuation Motion, the Modification Motion and the Payment Motion. Her counsel served officers of Bank of America and BNY Mellon, respectively, by certified mail, in addition to serving, either by first-class mail or electronically, every attorney who had made an appearance on BNY Mellon's behalf in the bankruptcy case. What BNY Mellon and the bankruptcy court found

17

unacceptable was that the Debtor had not also served BNY Mellon's counsel in the Hawaii state court action.

We considered a related argument in Frates, which concerned a motion to avoid a judicial lien. The appellee bank in Frates argued that service of the lien avoidance motion was improper due to the debtors' failure to serve the attorney who had represented the bank in the underlying state court action. Id. at 303-05. We concluded that compliance with Rule 7004(h) was all that was required. Id. at 305. Even though California law would have required service of post-judgment motions on the attorney, we did not "perceive any reason why compliance [with California law] should be compelled in light of the procedural due process safeguards provided by the [R]ules themselves." Id. As was the case in Frates, the Debtor served BNY Mellon in accordance with the Rules, and no additional service on state court counsel was required.

It is apparent from the transcript of the December 15 hearing that the bankruptcy court was troubled by what it regarded as the Debtor's bad faith in neglecting to serve state court counsel. More specifically, the bankruptcy court seemed to suspect that the Debtor or her counsel subjectively hoped that BNY Mellon would fail to respond to the various motions as long as they were not served on counsel in the foreclosure action in Hawaii. Objectively, however, it is not obvious that such a hope would have appeared realistic at the time. BNY Mellon had participated in the bankruptcy case more than once, including its filing of the relief from stay motion and documents relating to the claims process. As noted, Debtor's counsel served the

18

attorney who had filed the relief from stay motion on behalf of BNY Mellon, in addition to serving an officer by certified mail. If this was an effort to elude detection by the relevant decision makers at BNY Mellon, it was not an especially bold effort. More importantly, however, what matters is not whether the Debtor hoped BNY Mellon would not respond, but whether service was consistent with the requirements of due process and the Rules. It certainly is possible that service on state court counsel would have provoked a swifter and more effectual response, but the Debtor was not obligated to do more than the Rules require to invite such a response.

**C.    The record does not support a determination that the Debtor committed fraud on the court.**

During colloquy with the Debtor's counsel, the bankruptcy court stated its intention to vacate the 2012 Valuation Order based upon fraud on the court. Though the court's statement seems to indicate a finding that the Valuation Order was procured by fraud on the court, BNY Mellon takes the position that the finding of fraud on the court justified reconsideration of the Payment Motion.[7] Though the court ultimately did not vacate the Valuation Order, it nevertheless made clear its intention to disregard both the Valuation Order and the Modification Order for purposes of reconsidering the Payment Motion. It is unclear from

---

[7] More precisely, BNY Mellon argues that the bankruptcy court was authorized to "vacate" its oral ruling on the Payment Motion due to fraud on the court. As discussed above, the court was not required to vacate the oral ruling before conducting further proceedings on the Payment Motion.

19

the record whether or to what extent the bankruptcy court's finding of fraud on the court influenced its decision to deny the Payment Motion, but for the avoidance of doubt on remand, we review the finding.

Courts must use "'restraint and discretion'" in exercising their power to vacate judgments due to fraud on the court. United States v. Estate of Stonehill, 660 F.3d 415, 443 (9th Cir. 2011), quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). A finding of fraud on the court requires clear and convincing evidence. Estate of Stonehill, 660 F.3d at 443. Nondisclosure of evidence and even perjury usually are insufficient, unless the misconduct is "so fundamental that it undermined the workings of the adversary process itself." Id. at 444-45. Fraud on the court may be found in cases involving "a scheme by one party to hide a key fact from the court and the opposing party" by "intentionally misrepresent[ing] facts that were critical to the outcome of the case . . . ." Id. at 445, 452.

We note initially that none of the Debtor's actions that the bankruptcy court considered inappropriate were related to the Valuation Order itself. That order was entered in 2012, well before the Relief from Stay Order was entered and foreclosure proceedings began. We are unaware of any principle that would permit a court to vacate or disregard a final order years after its entry due to unrelated **subsequent** misconduct, even if that misconduct qualifies as fraud on the court. In any event, the record does not support a finding by clear and convincing evidence that the Debtor committed fraud on the court. The behavior the bankruptcy court apparently deemed fraudulent

20

amounted to no more than the Debtor's failure to provide the bankruptcy court and the Hawaii state court, respectively, with complete information regarding the Debtor's activities in the other tribunal. There is no indication that the Debtor did anything to conceal these activities.

The declaration of Debtor's counsel attached to the Modification Motion referred the bankruptcy court to the Relief from Stay Order previously entered in favor of BNY Mellon. Though the declaration does not state expressly that the foreclosure proceedings had begun, this omission is not the kind of intentional misrepresentation of "key facts" that might "undermine[] the workings of the adversary process" and support a finding of fraud on the court. Estate of Stonehill, 660 F.3d at 444-45. The fact that BNY Mellon had sought and obtained relief from stay in order to foreclose on the Hawaii Property was part of the bankruptcy court's record. Of course, had it chosen to respond to the Modification Motion while it was pending, BNY Mellon could have informed the bankruptcy court of any additional facts regarding the foreclosure proceeding that it deemed significant.

The bankruptcy court's finding of fraud on the court was not supported by facts in the record. To the extent that the bankruptcy court relied on that finding in denying the Payment Motion, it abused its discretion.

**D.    The Modification Motion and the Payment Motion were not a collateral attack on the Relief from Stay Order.**

At the December 15 hearing, the bankruptcy court repeatedly stated that the Modification Motion and/or the Payment Motion

21

constituted a collateral attack on the Relief from Stay Order or an inappropriate attempt to interfere with the foreclosure. The premise implicit in these comments is that the Relief from Stay Order precluded the bankruptcy court from taking any further action with respect to the Hawaii Property or BNY Mellon's claim. This premise is incorrect. "[A]n order lifting or modifying the automatic stay by itself does not constitute a de facto abandonment of the property from the bankruptcy estate." Catalano v. Comm'r of Internal Revenue, 279 F.3d 682, 687 (9th Cir. 2002).

Though an order granting relief from stay may provide for abandonment of estate property, this abandonment is effective only if expressly included in the order, and even then only if "the procedures specified in § 554 are satisfied." Id. Nothing in the language of the Relief from Stay Order provided that the Hawaii Property would be abandoned from the Debtor's bankruptcy estate. Thus, the Hawaii Property continued and still continues to be property of the estate, and the Relief from Stay Order does not preclude the Debtor from taking action in the bankruptcy case with respect to the Hawaii Property. It may be true that "most creditors" believe an order lifting the stay removes property from the estate, but if so, they are mistaken. Such creditors ignore the ongoing bankruptcy proceedings at their peril.

The tenor of the bankruptcy court's comments suggests that it viewed the Relief from Stay Order as granting affirmative permission to BNY Mellon to foreclose successfully on the Hawaii Property. But the language of the Relief from Stay Order did not provide that the Debtor must refrain from taking any action in

22

bankruptcy court to affect BNY Mellon's interest in the Hawaii Property. It merely removed one barrier - the automatic stay - that stood in the way of foreclosure. The termination of the automatic stay cannot be construed as an abdication of the bankruptcy court's jurisdiction over property of the estate or its authority to restructure the debtor-creditor relationship. If this were so, then bankruptcy courts would have no authority over creditors not subject to the stay. See § 362(b)(1)-(28), (c)(3)-(4). For these reasons, the Debtor's efforts to restructure her relationship with BNY Mellon notwithstanding the ongoing foreclosure proceeding cannot properly be construed as a collateral attack on the Relief from Stay Order.

The bankruptcy court's conclusion that the Payment Motion was a collateral attack on the Relief from Stay Order was based on an erroneous view of the law. To the extent the bankruptcy court based its decision to deny the Payment Motion on this view, it abused its discretion.

**E.    On remand, the bankruptcy court should determine the impact of the Valuation Order and the Modification Order.**

The Debtor has argued both before the bankruptcy court and on appeal that the Valuation Order is "law of the case" and binds the bankruptcy court and BNY Mellon with respect to the value of the Hawaii Property. Under the doctrine of law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Musacchio v. United States, ___ U.S. ___, ___, 136 S. Ct. 709, 716 (2016). The doctrine often forms the basis of "an appellate court's decision not to depart from a ruling that

23

it made in a prior appeal in the same case." Id. In the bankruptcy context, the proceedings following the Payment Motion should not be viewed as a "subsequent stage in the same case" that would require application of the law of the case doctrine. The Valuation Order was a final determination of "the discrete issue to which it [wa]s addressed," hence it was a final order in its own right under the flexible standard used in bankruptcy cases. See Eden Place, LLC v. Perl (In re Perl), 811 F.3d 1120, 1126 (9th Cir. 2016) (a final order must resolve and seriously affect substantive rights and determine the discrete issue to which it is addressed). The question of the preclusive effect, if any, of a prior final order of the bankruptcy court is a question of claim or issue preclusion. We regard the Debtor's references to "law of the case" to be an invocation, albeit inartful, of issue preclusion.[8]

Issue preclusion bars the relitigation of particular issues of fact or law decided in a prior proceeding. In re Summerville, 361 B.R. at 143. "The preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S. 880, 891 (2008). Issue preclusion requires that the following elements be met:

> (1) there was a full and fair opportunity to litigate
> the issue in the previous action;
> (2) the issue was actually litigated in that action;

[8] Claim preclusion is concerned with relitigation of claims that were or should have been raised in prior proceedings. Alonso v. Summerville (In re Summerville), 361 B.R. 133, 142 (9th Cir. BAP 2007). The Debtor does not contend that the Modification Motion or the Payment Motion raised a **claim** that was decided by the Valuation Order.

24

> (3) the issue was lost as a result of a final judgment in that action; and
> (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

United States Internal Revenue Svc. v. Palmer (In re Palmer), 207 F.3d 566, 568 (9th Cir. 2000). The bankruptcy court alluded tangentially to some of these elements during the December 15 hearing. Because we conclude that remand to the bankruptcy court is necessary, we decline to make a determination of the preclusive effect of the Valuation Order. Instead, we leave that determination to the bankruptcy court in the first instance, noting, however, that by its terms, the Valuation Order stated that, "As of October 22, 2010 and at all times since October 22, 2010 [i.e., through October 1, 2012, the date of entry of the Valuation Order], the subject property is valued at no more than $375,000.00 based on adequate evidence."

Likewise, the bankruptcy court on remand should determine what impact the Modification Order has on the proper disposition of the Payment Motion. As BNY Mellon's counsel noted at the December 15 hearing, the Modification Motion appeared to propose payment to BNY Mellon by March 1, 2014, a date five months before the Modification Motion was filed. Because the Modification Order simply states that the Modification Motion was "Granted," it is unclear what impact the payment date proposed in the Modification Motion had on the effectiveness of the Modification Order. We leave the interpretation of this aspect of the Modification Order to the bankruptcy court in the first instance. See Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013) ("We owe

25

substantial deference to the bankruptcy court's interpretation of its own orders").

## VI. CONCLUSION

Based on the foregoing, we conclude that the bankruptcy court did not err in revisiting the Payment Motion after having made an oral ruling at the October 8, 2015, hearing. However, we further conclude that the bankruptcy court erred in determining that service on BNY Mellon was improper. To the extent the bankruptcy court's denial of the Payment Motion was based on its finding of fraud on the court or its conclusion that the Payment Motion was a collateral attack on the Relief from Stay Order, the bankruptcy court abused its discretion. Therefore, we VACATE and REMAND the Payment Order for further proceedings consistent with this memorandum decision.